of a butcher's or grocer's bill, in the ordinary course of dealing, can be a preference, because the consideration is a continuing one. If the tenant does not pay his rent, he is ejected, and the main consideration is the forbearance; and so of the other like bills, though in a less degree. We have seen that a debtor cannot be said to intend a preference, unless he expects or fears either to stop payment or to become bankrupt. The evidence shows that this defendant did not contemplate bankruptcy. He had, indeed, years before stopped payment, and ceased to be a trader, and had disposed of his trade capital by what may or may not have been preference by the law of his domicile. But he had accumulated no new estate, and the payments which are now objected to were for his current expenses, and made out of his current earnings, though they were made monthly and not day by day. If these were technical preferences under section 39, which I doubt in the case of one not a trader, and not paying one trade creditor before another, yet I cannot believe they were fraudulent preferences within section 29, which should bar his discharge. Discharge granted.

LOCKE (BARRON v.).   See Case No. 1.054.

## Case No. 8,440.

### LOCKE v. CANNON.

[2 Cranch, C. C. 186.] [1]

Circuit Court, District of Columbia. Nov. Term, 1819.

BAIL IN CIVIL CASE — RIGHT TO APPEAR WITHOUT BAIL—PLEA TO JURISDICTION.

Upon a common-law attachment under the Virginia statute of 26th December, 1792 (section 6), the court may, in its discretion, suffer the principal defendant to appear without bail, and without discharging the attached effects, at the first term after the return of the attachment, to plead to the jurisdiction.

This was a common-law attachment against an absconding debtor, issued by a justice of the peace, under the act of Virginia of 26th of December, 1792 (page 116, sections 6–8). A vessel belonging to the defendant and one Primus Woodland was attached, and judgment entered at this term, which was the first term after the attachment.

Mr. Mason, for defendant, offered to appear without bail, for the purpose of pleading that the defendant was never an inhabitant of the District of Columbia, and therefore could not be an absconding debtor, and the justice had no jurisdiction to issue the attachment.

Mr. Swann, for plaintiff, contended that the defendant could not appear without bail.

Mr. Mason, in reply. If bail be given, the

[1] [Reported by Hon. William Cranch, Chief Judge.]

defendant can only plead to the debt; not to the jurisdiction.

THE COURT (MORSELL, Circuit Judge, absent) set aside the judgment, and permitted Mr. Mason to appear for defendant without bail, and without discharging the attached effects; and to plead to the jurisdiction as suggested.

LOCKE v. The PENELOPE.   See Case No. 16.946.

## Case No. 8,441.

### LOCKE v. POSTMASTER GENERAL.

[3 Mason, 446.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1824.

OFFICIAL BOND—SURETY—RELEASE—POSTMASTER.

The neglect of the postmaster-general to sue for balances due by postmasters within the time prescribed by law, although he thereby is rendered personally chargeable with such balances, is not a discharge of the postmasters on their sureties upon their official bonds. Nor is an order from the postoffice department, directing a postmaster to retain the balances due until drawn for by the general postoffice.

[Cited in United States v. De Visser. 10 Fed. 648; Hagood v. Blythe. 37 Fed. 250.]

[Cited in Read v. Cutts. 7 Me. 193; Mayor, etc., of Newark v. Stout (N. J. Sup.) 18 Atl. 948; Watertown Fire Ins. Co. v. Simmons, 131 Mass. 86.]

Debt, upon an official bond given on the 23d of December, 1811, by John Walker, Jr. (who was appointed postmaster at Burlington, Massachusetts,) and by one John Walker and the defendant, Joseph Locke, as his sureties, to the postmaster-general, conditioned for the faithful performance of the duties of his office by Walker, as postmaster at Burlington. Plea of general performance. Replication, the neglect of Walker to pay over the sum of $181.08, for which he was indebted as postmaster. Rejoinder, that the postmaster-general, on the 14th of December, 1812, gave a written order to Walker, to detain the balances due until drawn for by the general postoffice, which order remained uncountermanded until the dismissal of Walker from office, and that thereby Walker was prevented from paying over the balances, which subsequently became due every quarter; and that the postmaster-general neglected to sue for the same balances with six months after the expiration of each quarter. To this rejoinder there was a demurrer, and joinder in demurrer.

Mr. Shaw, for defendant, contended, 1. That the giving of time to the principal by the written order of 1812 was a discharge of the surety; 2. That the omission of the postmaster-general to sue for the subsequent balances within six months after they became due, according to the 29th section of the postoffice act of 1810, c. 54 [2 Story, Laws,

[1] [Reported by William P. Mason, Esq.]