## CUCULLU vs. LOUISIANA INSURANCE COMPANY.

Eastern Dis't

*March*, 1827.

The sentence of a foreign court of admiralty, is conclusive on the matters on which it decides.

But in an action between the insurer and insured, the court may examine whether the tribunal who condemned was rightfully constituted by the law of naions.

But the regularity of its proceedings cannot be gone into.

Whether, on a change from one form of government to another, the authorities and laws of the previous one exist until the new government goes into operation. *quere.*

Under the clause in a policy, warranted free from loss which may arise from engaging or being engaged in illicit trade the insurers are not responsible for all risks until the goods are landed.

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court. This action is brought on four policies of insurance, executed by the defendants on goods on board the schooner Felix, from the port of New Orleans to Soto la Marina, in the republic of Mexico. The petition sets out the usual averments of loss, abandonment, &c. and prays judgment for the amount insured, viz. $30,300.

The defendants pleaded the general issue. There was judgment in their favour in the court of the first instance, and the plaintiff appealed.

The principal ground of defence, set up to the claim of the petitioners, is derived from a clause contained in the policy of insurance, by which the insured warrant the assurers *"free from any charge, damage or loss, which may arise in consequence of engaging, or having been engaged, in illicit trade at any time whatsoever."*

To prove that the loss of the goods insured had arisen from one of the causes mentioned in the warranty, the defendants produced and read

in evidence a decree of condemnation, pronounced by a court of justice in the republic of Mexico.

On the trial, the plaintiff offered evidence to contradict the facts on which this sentence of condemnation was pronounced. The defendants contended, that the decree of the court was conclusive, in relation to all the matters on which it acted ; and objected to the introduction of any proof in opposition to it. Of this opinion was the court, and excluded the testimony : the plaintiff excepted.

The question which the bill of exceptions presents, with every other in the cause, have been most elaborately argued. The appellant has contended on this part of the case. *First:* That the sentences of courts of admiralty of foreign nations, are not conclusive evidence in an action between the insurer and insured. And, *Second :* That admitting the rule to be that they are conclusive, the sentence of the court which was offered in evidence was not, because the tribunal had not competent authority to act in the matter on which it pronounced judgment.

The first point revives a question which has been as much agitated and discussed as any

EasternDis'ct
*March*, 1827.

CUCULLU
*vs.*
LOUISIANA
INSURANCE
COMPANY.

The authority of a nation cannot extend beyond her own limits, but she may guard against approaching injury beyond them.

Any regulation extending the powers of a belligerent nation beyond those conferred *jure belli,* can only have effect within her own limits, and a breach of them must be considered a violation of municipal regulations.

A condemnation *jure belli,* and for a breach of municipal regulations will falsify the warranty by which the insurer was protected against loss from illicit trade.

Eastern Dis't
March, 1827.

CUCULLU
vs.
LOUISIANA
INSURANCE
COMPANY.

which has been presented to the tribunals of the United States. The weight of authority is so decidedly in favour of the conclusiveness of sentences of foreign courts of admiralty, in suits between parties standing in the relation of those now before the court, that we did not expect to see the subject stirred again. It is true this doctrine has always had its opponents, and able ones; but the steadiness with which the supreme tribunals of several states in the union, and that of the United States, have maintained it, notwithstanding the opposition, gives to their opinions a weight to which, in ordinary circumstances, they would not be entitled. In the year 1816, the question came before this court, and the judges then presiding in it, declared in conformity with the doctrine generally received throughout the union, that the judgment of a foreign court of admiralty was conclusive between the insurer and insured. This opinion has been ably, but on the best view we can take of the subject, unsuccessfully impugned, by the argument at the bar. The laws of Spain being so far as it could be learned at the time of that decision, or as it has been shewn now, silent on this matter, the court felt itself at liberty to adopt the doc

EasternDis'ct
March, 1827

CUCULLU
vs.
LOUISIANA
INSURANCE
COMPANY.

trine which it considered most conformable to the other commercial usages and customs prevailing in the state; and in acting on the subject, with the choice of conflicting opinions in other nations, it adopted that which assimilated us to the rules prevailing in the greater number of our sister states. It was not ignorant that a different effect was given to these sentences in some of the continental states of Europe, but that rather proved the law of nations was unsettled on this point, than that the rule the court gave the preference to, was not the true one. It might be as well said in Italy or France, that their jurists and courts were wrong, because the United States and England held a different opinion, as it is to argue here that we are in error, because in France and Italy they think differently from us. In questions of this kind we prefer the exposition of national law which may come from our own tribunals, to that of any foreign court or jurist, unless on an examination of the principles it rested on, we were perfectly convinced the foundation was unsound. There is another reason which has no inconsiderable weight with us. The more closely our rules, on questions of commerce, approach those of our sister states, the more facility do we ex-

Eastern Dis'ct
*March*, 1827.

Cucullu
*vs.*
Louisiana
Insurance
Company.

tend to that intercourse and trade, on which the prosperity of this state most materially depends ; and this consideration can never be lost sight of by the court, where the legislature leaves us without positive law.

We deem it unnecessary, for it would be unprofitable, to go at length into an examination of the different arguments used at the b :r, and shew why they failed to produce that conviction on us they were intended to impress. Had they even made us greatly doubt, they would not have induced us to retrace our steps, and decide this case on a change of opinion. It is now ten years since that decision has been made. It has been known to the community, and the parties to this suit must be presumed to have contracted in relation to the law as expounded by the court of the last resort in the state. Under such circumstances, nothing short of the clearest conviction on our part that we had been in error, could authorise us to recognise a different rule, and apply it to the case before us.

But it is contended that, however the general rule may be, the sentence of the court offered in evidence was not conclusive, because it was pronounced by a tribunal of incompetent authority.

EasternDis'ct
*March*, 1827.

CUCULLU
*vs.*
LOUISIANA
INSURANCE
COMPANY.

The first question which meets us on the enquiry into the correctness of this position is, whether this court has the power to examine into the competency of the tribunal by whose sentence the condemnation was pronounced?

We entertain no doubt that we possess such power. The great extent to which we carry our comity for these tribunals, and the influence-we accord to their judgments, far from being an argument against this power, renders the exercise of it indispensable to the correct administration of justice. That individuals by taking on themselves the attributes of judicial power, and clothing their acts of assumed jurisdiction with the forms of proceedings of courts of justice, could rightfully condemn property, and give to their sentences the effect which belong to those of tribunals constituted by sovereign authority, is a proposition that requires no refutation. It is clear the right belongs to every court to examine whether the sentence offered to it, emanates from an authority competent, by the law of nations, to judge of the matters on which it has pronounced. 4 *Cranch*, 269. 1 *Rob*. 144. 4 *ibid* 35. 5 *ibid* 255.

The competency of the tribunal, whose sen-

EasternDis'ct
*March*, 1827.

CUCULLU
*vs.*
LOUISIANA
INSURANCE
COMPANY.

tence was offered in evidence, has been assailed on two grounds. *First :* That it was a tribunal established by the government of Mexico, antecedent to the formation of the federal constitution, and that its authority ceased with that event. *Second :* That the laws by which tribunals of marine jurisdiction were created in that country, prescribed a different organization from that which appeared to belong to the court, that condemned the property.

The plaintiff produced no proof in the court below, in support of this ground ; but he contends, that the incompetency of the tribunal results from the evidence introduced by the defendants themselves.

That evidence shows that tribunals of admiralty were established prior to the constitution:—That, by that instrument, circuit courts were directed to be established, in which the jurisdiction of all prizes by sea and land, *(presas de mar y tierra)* and the cognizance of all pursuits in relation to contraband goods, should be vested.

Whether, on a voluntary change by a people, from one form of government to another, the laws in force at the time of such change

EasternDis'ct
March, 1827.

CUCULLU
vs.
LOUISIANA
INSURANCE
COMPANY.

cease to have any effect, and the authorities by whom they are administered, lose the power vested in them by the previous government, before the succeeding one is organized and goes into effect, are questions by no means free from difficulty. The very general use of a positive provision on that subject in the different constitutions which have been formed since the independence of these states, is certainly a strong argument to show, that in the opinion of the framers of these instruments, such a provision was necessary, and that without it, a complete *interregnum* would be created, during which there would be neither laws, nor officers to administer them.— This argument is, however, by no means conclusive, and there are many who hold a contrary doctrine. It is true that a majority of the members who now compose this tribunal, so decided in a case that came before it in the year 1821, and such, also, was the opinion of the late superior court of the territory of Orleans. But a majority of the persons who have at different times filled this court, since its organization, seem rather to have thought, that the constitution did not supercede the former government, until put into operation by

Eastern Dis't
*March*, 1827.

CUCULLU
*vs*
LOUISIANA
INSURANCE
COMPANY.

the legislature; and one of the judges declared, that without a schedule, this would have been the consequence. That the most radical change in form, does not destroy the old government until the means are furnished of giving full effect to the new. *Bermudez*, vs. *Ibanes*, 3 *Martin*, 2. *Dufau* vs. *Massicot*, 3 *ib*. 289. *Bouthmy* vs. *Dreux*, 10 *ib*. 1. 2 *Mart*. 278.

Two of the judges in this court retain the opinion they expressed in the case of *Bouthmy* vs. *Dreux*, in relation to our own constitution; but we unanimously think, that the question is by no means so clear and free from doubt, as to authorise us to declare, that the government and courts of another country, who came to a different conclusion in relation to the effect produced by a change from one form of government to another, did what they had no right to do; and that all their acts are null and void. They were the proper judges to construe their own constitution and laws, and their decision must be adopted as the true construction by other countries. The correctness of this principle is established by an irresistible course of reasoning in the case of *Elmendorf* vs. *Taylor*, decided in the su-

Eastern dis'et
*March*, 1827.

CUCULLU
*vs.*
LOUISIANA
INSURANCE
COMPANY.

preme court of the United States. The chief justice, in delivering the opinion of that tribunal, observes: "No court in the universe, which professed to be governed by principle, would, we presume, undertake to say, that the courts of Great Britain or France, or any other nation, had misunderstood their own statutes, and therefore erect itself into a tribunal which should correct such misunderstanding." 10 *Wheaton*, 160.

That a construction has been given to the constitution of Mexico, adverse to the position of the plaintiff, is proved to our entire satisfaction. The acts of the court in continuing to administer justice after the adoption of the constitution, and before the organization of the circuit courts, is conclusive evidence of *their* opinion respecting their jurisdiction. In addition to this, the testimony of lawyers in the city of Mexico has been taken. One of them, a distinguished member of the profession, and holding a high situation in the government, after examining the proceedings, swears—that the court which condemned the goods was a lawful tribunal, and that its proceedings were regular, and its jurisdiction undoubted, as the circuit courts had not, at the

EasternDis'et
*March,* 18 7.

CUCULLU
*vs.*
LOUISIANA
INSURANCE
COMPANY.

time the sentence was rendered, been established under the constitution. Such being the construction in Mexico, it must be the construction here, where the proceedings come collaterally before us.

The 2d point on which the competency of the tribunal is attacked, is derived from the terms of the law creating it. By this law, a Spanish ordinance contained in the 4th, 5th, 6th, and 8th laws of the 8th title of the 6th book of the *Novissima Recopilacion,* is prescribed as the rule to be followed in the organization of the tribunal, and its practice; except where it is in opposition to the laws of Mexico.

This ordinance has been minutely observed on by the counsel, and a close comparison of it, with the actual organization of the court, as set forth in the proceedings, does certainly show a considerable variance between them. But we are as unprepared on this ground as the other to declare the court incompetent; for we have only part of the laws before us.— That which establishes the tribunal declares, that the ordinance is to be followed, except where the laws of Mexico differ from it.— When the organization of the tribunal is shewn to be different from that ordinance, we

can come to no other conclusion, than that the difference is produced by laws to which we have not access. Even if other laws besides the constitution were before us, it would be difficult for us to say, that the tribunal was not rightfully and legally constituted. It is a conclusion to which no court can come, in regard to the organization of a tribunal in another country, without much hesitation, and without feeling that it is peculiarly liable to err. To form a safe judgment, it must have all the laws of the country before it, and it must be satisfied, that it is so well acquainted with the jurisprudence of that country, that the same construction is given to the laws, as they receive in the place where they are made. Both of which, it is difficult for a foreign tribunal to be sure of. Our ideas on this head may be illustrated, by supposing a Spanish tribunal to enquire into the constitution of the court of king's bench in England, and its powers; in order to see how it got jurisdiction in civil matters, and how far that jurisdiction extended.

But in this case, we are not left to these considerations. It has been proved by the evidence of lawyers residing in the city of Mex-

Eastern Dis'ct
March, 1827.

CUCULLU
vs
LOUISIANA
INSURANCE
COMPANY.

EasternDis'ct
March, 1827.

CUCULLU
vs
LOUISIANA
INSURANCE
COMPANBY.

ico, that the tribunal was competent, and its proceedings regular. The testimony was much commented on, but nothing we have heard in argument, has destroyed, or shaken its credit. It appears to have come from persons of respectability. It was taken by deposition, and these depositions were opened, as the endorsement on them shews, some time before the trial. If the plaintiff believed they were improperly obtained, or that the witnesses erred through ignorance, or from corrupt motives, it could not have been difficult to disprove them. In every point of view, then, we are satisfied, that there has not been enough shown, to authorise this tribunal to declare that the court which condemned the goods was incompetent.

The same observations apply to the objection that this was a prize, and not an instance court.—The proof establishes, the tribunal had authority to pronounce the judgment set forth in the proceedings. What is the nature and extent of that judgment, has been much controverted, and will be the subject of examination hereafter.

A great deal was said in relation to the irregularity of the proceedings. The want of a

proper law officer to advise—the assistance of
an auditor, and not an assessor, the necessity
of two sentences according to the laws of
Spain, &c. Some of these objections might,
perhaps, be well founded, if we were an ap-
pellate tribunal to review the sentences of the
Mexican courts of admiralty. But we have
no such power, and consequently cannot look
into these errors. They were matters for the
consideration of the judges who pronounced
the sentence, and their decision on them is
final. 4 *Cranch,* 278.

The plaintiff, however, further contends,
that admitting the sentence to be conclusive
as to every thing on which it acts, still he
must recover on the following grounds :—

I.—The seizure was made on the high seas,
not in the port of Soto la Marina.

II.—The whole of the goods seized, were
condemned *ure belli,* or if not the whole. a-
part were.

1. The declaration of the captain, officers
and crew of the schooner taken before the
consul of the United States at Alvarado,
states, that they sailed from New Orleans, and
anchored in Soto la Marina Roads, on the
7th September, and that on the same day a

EasternDis'ct
March, 1827.

Cucullu
vs.
Louisiana
Insurance
Company.

boat came on board from the Mexican vessel Tampico, and took forcible possesion of her. In the examination of the captain taken before the court, he renews the declaration that he was at anchor when he was seized, but states that it was in the port of Soto la Marina, and adds that at the time of the seizure, passengers who came in the ship had been landed.

It is admitted in the argument, that the place where the schooner was seized, is some distance from that where vessels usually anchor when they discharge their cargoes at that port. That it was about four leagues from the shore—and that the coast is low and flat.

Whether this was a seizure on the high seas or not, is immaterial in the view which the court has taken of the rights of the parties. Before stating those views, a position assumed by the plaintiff must be examined. It is contended by him that from the terms of the policy, the defendants took all risks until the goods were landed.

The terms of the policy certainly are, that the insurer is to be responsible until the goods are landed. But the designation of time during which the responsibility should last,

can only extend to the risks for which the EasternDis'ct March 1827. insurer became responsible, not to those excluded by the warranty. *They* are exceptions introduced to the general terms of the contract, and their force and meaning must be determined by a consideration of the extent to which this exception goes; not by the general words of the policy, the effect of which it was the object of the warranty to guard against.— Whether the seizure was made in such a place as it might be rightfully made, for illicit trade, is the true question—not whether the goods were landed. According to the construction of the plaintiff, the warranty in the policy was of no use to the insurers. For if they were responsible for all risks of seizure for illicit trade, until the goods were landed, notwithstanding the warranty, then the insertion of the exception did not alter their situation, as without such a clause their responsibilities would have ceased with the landing of the goods.

Cucullu vs. Louisiana Insurance Company.

A law of Spain was much relied on to prove that the jurisdiction exercised in this case was beyond the territorial limits of the government of Mexico. The law is found in the ordinance of Corso already quoted. It is entitled the rules

EasternDis't
March, 1827.

CUCULLU
vs
LOUISIANA
INSURANCE
COMPANY.

which are to be observed in case of prize. It declares that the immunity of the coast, shall not, as heretofore, be marked by the doubtful and uncertain distance of a cannon shot, but by the distance of two miles—that all prizes made within that distance shall be judged of by the commandant of the port into which the prize is brought; and that, if made beyond it, they shall be taken cognizance of by the tribunal of the captor. *Novissima Recop. Liv.* 6, *tit.* 8, *law* 5.

That this ordinance marks the extent of territorial jurisdiction of the sovereign of Spain, and that the seizure here made was beyond these limits, cannot be questioned. But with these admissions, the question still remains, whether the seizure was not made in the exercise of a right, which every nation enjoys, to prevent its laws being evaded. If it was, it is immaterial in our view of the subject whether it was made within the limits, or not.

Strictly speaking, the authority of a nation cannot extend beyond her own territory By the common consent of nations this authority has been enlarged, where the sea is the boundary, to the distance of a cannon shot, from

the shore.   Within these limits foreigners are
protected, and prizes cannot rightfully be made
of their vessels by enemies.   But the right of
the nation to protect itself from injury, by pre-
venting its laws from being evaded, is not
restrained to this boundary.   It may watch
its coast, and seize ships that are approaching
it with an intention to violate its laws.   It is
not obliged to wait until the offence is con-
summated before it can act.   It may guard
against injury, as well as punish it.   If, in-
deed, in the exercise of this right an unreason-
able range was taken, other nations might
object.   But so long as it is confined to the
seizure of vessels entering the port for which
they are destined, it will not, it is presumed,
form a just ground of complaint.   Our own
legislation authorises revenue cutters to visit
vessels four leagues from the coast; and the
acts of congress on this subject, are a clear
expression of the opinion of our government,
that nothing in the law of nations prohibited
them to confer such power on its cruizers.
The case of *Church* vs. *Hubbard*, decided in
the  supreme court of the United States, is
almost that before the court.   It was there
held that the insurer under warranty, such as

EasternDis'ct
*March* 1827.

CUCULLU
*vs*
LOUISIANA
INSURANCE
COMPANY.

CUCULLU
*vs.*
LOUISIANA
INSURANCE
COMPANY.

that inserted in this policy, was not responsible for a seizure made four or five leagues from the coast—although it was admitted the territorial jurisdiction did not extend further than a cannon shot from the shore. The cases cited by the appellant, from *Taunton's Reports,* were decided on a different form of policy.— The warranty there was "free from capture and seizure in the port, or ports of discharge." By these expressions the parties excluded a particular place from the risks assumed by the insurer under the policy. By the warranty here, the insured took upon himself the risk of seizure for illicit trade at any distance from shore, where, by the law of nations, such seizure could be rightfully made, 2 *Cranch*, 186, 2 *Taunton*, 499, 4 *ibid* 387, 9 *Wheaton* 371, 11 *Mass.* 104.

The second ground assumed by the plaintiff on this part of the case, will be best understood by dividing it. We will first consider the proposition that the whole of the goods were condemned in the exercise of a belligerent right.

The distinction, between the rights which a nation acquires in consequence of her being at war with another, and those which she pos-

sesses as sovereign within her own limits,

seems to us so clear that there can be little doubt in relation to it. The law of nations having defined the extent of belligerent rights; any law of a particular country which goes beyond these rights, must necessarily derive its authority from the nation within his own limits, and a punishment for a breach of this law, must be referred to a violation of municipal regulations, for it is only as such, that it had any force; or that punishment could take place under it.

In regard to the particular regulation under which this property was condemned, it is beyond doubt that it was a municipal one, and that it derived its authority from the power which the nation had within her own territory, not from her rights as being at war with another country. The decree of the Mexican government, prohibits the admission into their ports, not only of goods and merchandise, the production and manufactures of Spain, but also of all merchandise which may have been brought from the ports of that country, no matter what its origin, or to whom it may belong. Or, in other words, they condemn even neutral property, of neutral origin, if it comes from

EasternDis't
*March*, 1827.

CUCULLU
*vs*
LOUISIANA
INSURANCE
COMPANY.

Spain or her dependencies.    This was a right which the law of war did not confer, consequently a condemnation under it cannot be considered one, *jure belli*.

It was urged, that the motives avowed by the government in passing the decree, show plainly that it was intended to distress the enemy, and that as the measure arose out of a state of war, a condemnation for a breach of the law must be referred to the same source. Admitting this to be their motive, and we believe it such, the consequence contended for, does not follow.    Sovereigns may make what regulations they please within their own territories, and no matter what may be the motives, the source from which the regulation derives its force, must be the test by which the law is to be designated, not the motives that induced its passage.

The cause of *Foix* vs. *Phœnix Insurance Company*, decided in the supreme court of Pennsylvania, was much relied on by the plaintiff.    It arose out of a sentence of condemnation pronounced under the Milan and Berlin decrees, and the assurer contended he was not responsible, as by the policy he was warranted free from illicit, or prohibited

EasternDis't
March, 1827.

CUCULLU
vs
LOUISIANA
INSURANCE
COMPANY.

trade. The court decided that a condemnation under that decree, though the vessel was seized in entering the port, was not a condemnation for illicit or prohibited trade, but a condemnation *jure belli*, and that the insured could recover.

A great deal of the argument of the counsel, and the reasoning of the judges, were directed to show, that the Berlin and Milan decrees were a violation of the law of nations, and, to a certain extent, there is no doubt they were. Undoubtedly, France had no right to say, neutral nations should not trade in the manufactures of her enemy, and that if they did, their property would be captured on the high seas. But we agree with the counsel for the defendants, that parts of these decrees were not contrary to that law. A belligerent has the right to say, he will not permit merchandize from an enemy's country to be imported into his. He can, not only exercise this power in time of war; he may do it in a period of profound peace. Examples of the latter kind are very numerous, and the authority to do so, is unquestionable. To refuse it, would be tantamount to a declaration that the nation who

Eastern Dist.
*March.* 1827.

CUCULLU
*vs.*
LOUISIANA
INSURANCE
COMPANY.

passes such a declaration is not indepen-
dent. For if she be, who can question her
right to regulate her internal concerns as
she pleases.

The judges who decided this case, felt the
weight of this principle. They admitted
the right to pass such a law as has been just
spoken of, and the right to enforce it, at an
indefinite distance from the shore; but they
decided against the assurer, because the
seizure and condemnation had not been
made on the ground, that the insured was
about to import prohibited goods, but that
they were British manufactures. 5 *Sergeant
& Rawle.*

Being thus satisfied, that a condemnation
under these decrees of the Mexican govern-
ment, will falsify the warranty; we proceed
to examine whether in point of fact, any or
all the goods insured were so condemned.

There were two sentences pronounced by
the court. The first, after reciting that the
cargo is composed of 295 barrels of wine,
123 boxes of wax, of hardware, and other ef-
fects, proceeds to detail the proofs, by which
it appears that the wine and wax came from
the port of Havana; and concludes as fol-

lows: *"that we ought to declare, and do in fact declare, as good prize, not only the before mentioned American schooner, the Felix, but also the wine and wax referred to in the proceedings, with the marks there given. That this condemnation should also extend to the other 45 boxes of wax which are found on board the said schooner, and all the other productions, merchandize, and effects, which shall be proven to be of Spanish origin, proceeding from any port of that nation, or of those prohibited, &c. &c."*

Eastern Dis't
March, 1827.

CUCULLU
vs.
LOUISIANA
INSURANCE
COMPANY.

The second decree was preceded, according to the practice of the Spanish tribunals, by a report of the auditor, or assessor, who states, that the former decree respecting the schooner Felix, should be confirmed, with the exception of a billiard table, a still, ten hampers of empty bottles, and a box of books; they not being contraband, nor proved to be brought from the port of Havana in the said schooner, nor Spanish property, nor the production or manufactures of the enemy; in which qualities and prohibitions *(cuyas calidades y prohibiciones)* are comprehended the other effects which are condemned as good prize, according to our

CUCULLU
*vs.*
LOUISIANA
INSURANCE
COMPANY.

revenue laws and the declaration of war against Spain and her dependencies.

After stating some of the proceedings which had already taken place in the tribunal, the assessor adds: "From which proceedings result most clearly, the legal causes of seizure, viz: the national qualities of some articles, and the sailing of the vessel from a port which was under the domination of Spain."

The junta, or court, on this report gave a final sentence; in which, after reciting the previous proceedings, they declare, that "having read and taken into consideration the antecedent opinion of the assessor, and discussed all the points, with which we unanimously agree, conformably to what is there exposed, confirming, as we do confirm, the condemnation of the schooner Felix and her cargo, as good prize, excepting from said penalty ten hampers of empty bottles, a still, a billiard table, and a box containing five bibles and four new testaments."

It has been contended, that these sentences do not embrace the whole of the cargo, that only a part of it is condemned.

But on this branch of the subject, the

court has no doubt. The original sentence condemns the wine, and wax, and such other articles as might be found liable to condemnation. The report of the assessor confirms this sentence, except in relation to a still, a billiard table, some empty bottles, &c. If it had been the opinion of the assessors that nothing more had been condemned than the wine and the wax, and that nothing more should be, the exceptions were unnecessary; for a confirmation of the original sentence, supposing it limited to the wine and the wax, would not have embraced them. The final sentence, however, places this matter beyond argument. It condemns the schooner *and her cargo*, with the exception of certain articles there mentioned. Consequently, every article, of which the cargo was made up, and which is not excluded by the exceptions, is condemned.

The report of the assessor already referred to, which is adopted by the court as the basis of its last decision, after stating that certain goods were acquitted because they were neither articles of contraband, nor proved to be brought from the port of Havana, nor Spanish property, nor the productions

EasternDis't
*March* 1827.

CUCULLU
*vs.*
LOUISIANA
INSURANCE
COMPANY.

CUCULLU
vs
LOUISIANA
INSURANCE
COMPANY

or manufactures of Spain, proceeds to state, that in these qualities and prohibitions, are comprehended the other effects condemned. It was argued, that as the wax and the wine were condemned in the first sentence, for a breach of municipal law, and as new ground, that of being enemies property, is inserted in the second as a cause of condemnation, that the fair construction to be given to these decrees is, that all the goods embraced by the last judgment, which were not included in the first, must be considered as seized and forfeited for the additional reason given in the sentence; and that, for this portion of goods the insurers are responsible, as the warranty does not exclude war risks.

But the second sentence is in the conjunctive. It condemns the whole, for *all* the causes therein mentioned. Consequently, it condemns them for *each* of these causes, and one of them is a breach of municipal law.— If there were any inconsistency in the two decrees; or if the different reasons assigned in the last one, could not be reconciled with each other, then, perhaps, it would be true to say, that the several causes of condemna-

EasternDis't
March, 1827.

Cucullu
vs.
Louisiana
Insurance
Company.

tion must be referred to the different portions of which the cargo was made up. But there is no such contradiction; they may well stand together. The goods might be enemy's property, and also come from the Havana. It is not impossible, that between the first and second sentence, proof was obtained, which brought the whole cargo within the reason given in the last decree. We at least are bound to presume so; for so the sentence has said, and we cannot contest its verity. But, admitting this proof was not obtained, and that the wine and wax must be considered as condemned for the causes mentioned in the first decree, and no other; that does not weaken the position, that the rest of the goods were not only enemy's property, but brought from an enemy's port.— The decree condemns all the cargo, for all the reasons for which it could be condemned; proving that part of it came within one of these reasons, does not establish, that the remainder was condemned for a single cause, when the words of the sentence say, they are within all.

It is therefore ordered, adjudged and de-

CUCULLU
*vs*
LOUISIANA
INSURANCE
COMPANY.

creed, that the judgment of the district court be affirmed with costs.

*Mazureau & Strawbridge* for the plaintiff, *Eustis & Slidell* for the defendants.