Platt, J.
The chancellor has justly considered the written contract of the 1st of November, 1807, signed by Consequa and Edmund Fanning, as virtually waived and abandoned, by mutual consent of the parties.
*406 I also fully concur with him in opinion, that the cargo of goods shipped in the “ Chinese,” and for which Ohed Chase gave a note, as agent for the appellants, must be deemed as goods sold and delivered by Consequa to them at Canton. Even admitting that Chase had no previous authority to make such a purchase, or to give such a note, on account of the appellants, yet as they actually received and converted the goods, with full notice that the cargo was sent by Consequa, as goods sold, their subsequent ratification and adoption were equivalent to a previous authorization. The appellants were, therefore, justly charged with the amount of that shipment, according to the invoice price ; and with interest according to the rate allowed in China; the contract of purchase having been made there, and the price being payable there.
The other cargoes have been properly considered by the chancellor, as consigned to the appellants, as general commission merchants, under a contract on their part, to sell the goods for account of the consignor, and to remit the nett proceeds.
But in allowing interest according to the law of China, on such nett proceeds, it seems to me, his honor the chancellor, has erred in his application of the rule of the lex loci con-tractus.
According to Huberus, (de conjiictu legum, vol. 2. book 1. tit. 3.) the general rule is, that contracts are to be interpreted according to the laws of the country where they are made. But if by the terms or nature of the contract, it appears that it was to be executed in a foreign country, or that the parties had respect to the laws of another country, then the place of making the contract becomes immaterial; and the obligation must be tested by the laws of the country where the duty was to be performed. Or, in the words of * Huberus, “ verum tamen non ita prcecise respiciendus est locus in quo contractus est initus, ut si partes alium in contrahendo hewn respexerint, Ule non potius sit considerandus. JVam contraxisse unusquisque in 60 loco intelligitur, in quo ut solveret, se obligavit.”
In Champant v. Lord Ranelagh, (Pr. Ch. 128.) it was decided, that a bond executed in England, and made payable in Ireland, carries Irish interest; where no interest was mentioned.
In Robinson v. Bland, (2 Burr. 1077.) a bill of exchange drawn in France for money lent there, and made payable in England, was deemed a contract subject to the laws of England, ; and to bear English interest.
In Thompson v. Ketchum, (4 Johns. Rep. 285.) a note was drawn in Jamaica, and made payable in New-York; and the Supreme Court of this state followed the same rule. In Smith v. Smith, (2 Johns. Rep. 235.) Ruggl.es v. Keeler, (3 Johns. Rep. 263.) Emory v. Grenough, (3 Dal. Rep. 369.) and Van Schaick v. Edwards, (2 Johns. Cas. 355.) the same doctrine was maintained.
*407 In the case of Ekins v. East India Company, (1 P. Wms. 395.) cited by the chancellor, it was decided, that for a tor-tious sale of the plaintiffs ship in India (by his agent there) to the defendants, they should account for the value in India, with 12 per cent, interest, according to the laws of that country, deducting only the charge of remittance to England, where the remedy was sought. But that case bears a marked distinction from the one now before us; because, in that case, the whole transaction took place, and the entire cause of action arose in India.
There is no doubt of the rule laid down by the chancellor, “ that interest must be paid according to the law' of the country where the debt was contracted, and to be paid.” He says, in this case, “the plaintiff consigns a shipment to the defendants, and the cargo is received at Canton, by the agent of the defendants on their behalf; Canton is then the place where the contract is made, and Canton is the place where the debt is to be paid.”
With great respect, it seems to me, that his honor the chancellor did not advert to the important consideration, #that by the terms of the contract so made at Canton, the goods were to be brought to Nevo-York, not for the account and at the risk of the consignees, but to be sold Aere, by them, as factors or commission merchants, who were to remit the nett proceeds to the consignor at Canton.
the words of Huber us apply : “ contraxisse unusquisque in eo loco intelligitur, in quo ut solveret, se obligavit.”
I apprehend it is not the case of “ a debt contracted and to be paid at Canton.'’ The contract was made there, but it was to be executed here. It was of that species of bailment. called in the civil law, do ut facies. The parties had express reference to this country, as the theatre of operation under the contract. If the consignees had sold the goods in China, or had carried them immediately to Russia, and sold them there, it would have been a violation of the contract, and a tortious conversion.
The delivery of the goods to the agent of the consignees at Canton cannot, in my judgment, affect the present question ; because they were delivered for the special purpose of being brought to this country, to be sold for the benefit and account of Consequa. While on the voyage to New- York, the cargoes were at his risk, as owner. If the goods had been burnt in a warehouse at New- York, or sunk in the harbor there, without blame imputable to the consignees, the loss must have fallen on the consignor. So, if the nett proceeds had been regularly shipped at New- York, in the usual course,¿Tor remittance to Canton, the obligation and duty of the consignees would have been discharged, and the money, on its voyage to Canton, would have been at the sole risk of Consequa.
By “ remitting,” I understand no more than a delivery of the *408 money on board a proper vessel at New-Tork, to a suitable agent, for the purpose of being transported to Canton, by the usual route, and duly consigned to Consequa. Such agent, so employed, is to be deemed the agent of Consequa, for receiving and transporting money ; and such delivery by the consignees, js equivalent to payment to the consignor. The duty of making such remittance was to be performed here, and the failure in the performance of that duty is the only gravamen of the plaintiff’s claim.
* Consequa had a right (and he exercised it in part) of drawing for, and receiving the nett proceeds at New- York, at any time before they were remitted; or, he had a right to direct the mode or channel of remittance, provided it was not unlawful.
Hence, I infer, that the contract did not oblige the consignees to pay the avails of the cargoes to Consequa at Canton. On the contrary, this country was the only sphere of their duties; the res gesta was here, and they were not bound to do any thing but with a reference to our own laws.
The contract is silent as to the rate of commissions, and also, as to the risk of the property, while in charge of the consignees. Suppose that, by the laws of China, a commission merchant would be entitled to ten per cent, for his services, and would be responsible to his principal against all risks ■: would it be contended, in the case of goods sold here on commission, although sent from China for that purpose, that oui laws, which establish different rules as to the rate of commissions, and the responsibilities of such agents, must give place to the laws of China l If not, why is not our law of interest equally incident to this contract ? Why not allow Chinese commissions in this case, as well as Chinese interest 1
The rule as stated in lluberus, and as it is exemplified in the cases before cited, seems to me, in its just application, to establish the point, that the laws of New-York must govern these consignments.
The case of Ellis v. Lloyd, (1 Eq. Cas. Abr. 289.) is also a strong authority in favor of the appellants, on the question of interest. There, a merchant in England employed his agent in the island of Nevis, to receive a quantity of sugar due to him there on bond, with directions to the agent to remit the sugar to England. The agent received the sugar, and converted it to his own use; and he was held to account for the value of it, with interest according to the law of Nevis, and not according to the law of England.
In this case, Consequa sent to the appellants Acors Sheffield’s note, to be collected by them; and directed the avails to be remitted to him, and he also sent goods to them *to be converted into money, and directed the nett proceeds to be remitted to him in Canton. Now, I can see no reason why the laws of this country should not govern in the one case as *409 well as the other; and certainly Chinese interest is not reeov-erable on the avails of the noté.
Whether the American embargo furnishes any excuse for not remitting the nett proceeds of the consigned cargoes, or the amount collected on Sheffield’s note, so as to bar the claim for interest, during the time in which it was unlawful to make such remittances, is a question, which, I think, does not arise in the case. The appellants have laid no foundation for such exemption ; because, for aught that appears, they had the use of the money during the embargo; and, therefore, ought to pay interest for it. If they had kept that money distinctly as a deposit for Consequa, during the embargo, and had after-wards duly remitted it, then the question would have arisen, upon which I forbear to express any decided opinion.
In regard to the debt due for goods sold to the appellants, I have no doubt the law is as stated by the chancellor, to wit: “ that in questions arising between the subjects of different states, each is a party to the public authoritative acts of his own government; and he is as much incapacitated from making the consequences of an act of his own state, the foundation of a claim to indemnity upon a foreign subject, as he would be, if such act had been done immediately and individually by himself ” (Conway v. Gray, 10 East, 536.) But I am not prepared to say, that an omission to perform the office of an agent or commission merchant, where the law forbids his acting in that capacity, would subject the factor to the same hard rule. The absolute debtor contracts in his own right, for his own exclusive benefit, and at his own risk; but the consignee is the mere agent or servant of the consignor, acting here, chiefly for the benefit, and at the risk of his principal, and as his representative. It, therefore, seems to me very questionable, whether the acts of his government ought to be personally imputed to the agent, in a question between him and his principal.
*Upon the whole case, therefore, my opinion is, that the decree ought to be reversed, to the end, that in restating the account between these parties, the appellants be charged with interest at the rate of 7 per cent, instead of 12 per cent, per annum, on the nett proceeds of the goods consigned to them, to be sold for the account of the respondent, (a)
This being the unanimous opinion of the court, it was thereupon “ ordered, adjudged and decreed, that the decretal order made in the Court of Chancery, in this cause, wherein the said respondent is complainant, and the appellants defendants, and bearing date the 30th of September, 1817, be reversed, so far as the same orders and directs that the master, in taking the account thereby directed, should charge the ap pellants with interest, at the rate of twelve per cent, per annum, upon all goods and merchandize consigned by the respondent *410 to the appellants, to be sold for the respondent’s aecount, from the times the respective proceeds thereof ought to have been remitted to the respondent, having regard to the course of such dealings, and the situation of the parties; and so far as the same decree directs the sum of forty-three thousand and twenty-five dollars and eighty-seven cents, to be deducted from the amount of the shipment made by the respondent, on the 25th of November, 1810, in the ship or vessel called the Chinese, in the pleadings mentioned, as being so much of the said shipment assigned by the respondent to William Baring and others, by the description of Baring & Co., and the sum of twenty-one thousand seven hundred and ninety-eight dollars and seventy-eight cents, being the residue of the said last mentioned shipment, after such deduction as aforesaid, to be charged for goods and merchandize to that amount, consigned by the respondent to the appellants, and by them received to sell and dispose of, for account of the appellant; but that the said de-cretal order be, in all other things, affirmed; and it is further ORDERED, adjudged and decreed, that the decretal order made in the said Court of Chancery in this cause, on the 3d of December, 1818, be reversed, so far as the same confirms the report of the master *made in this cause, as relates to the parts of the aforesaid order and report hereby reversed or varied; but that the same be, in all other respects, affirmed ; and it is further ordered, adjudged and decreed, that the report of the said master be varied so far as relates to the interest on the said consignments, and so far as relates to the charge in respect to the shipment made on or about the 26th of November, 1810, in the said ship or vessel called the Chinese; and that the master, in taking the said account, be directed to charge the appellants in the said account with the goods and merchandize in the pleadings mentioned, shipped by the respondent, on or about the 25th of November, 1810, in the ship or vessel called the Chinese, amounting to forty-four thousand, eight hundred and seventy-eight dollars and sixty-five cents, according to the invoice price thereof, as stated in the pleadings, as for goods and merchandize consigned by the respondent to the appellants, and by them received to, sell and dispose of on account of the respondent; and that the master be also directed to charge the appellants with interest at the rate of seven per cent, per annum, and no more, in cases of goods and merchandize consigned by the respondent to the appellants, to be sold for the respondent’s account, from the time the respective proceeds thereof ought to have been remitted to the respondent, having regard to the course of such dealing, and the situation of the parties ; and, also, to charge the respondent with interest at the rate of seven per cent, per annum, on remittances, on account of the consignments; and it is further ordered, adjudged and decreed, that the record and proceedings in this cause be remitted,” &c.

 Vide Boyce and Henry v. Edwards, 4 Peters’s Rep. 111. 123.