HOSFORD *v.* NICHOLS AND OTHERS.

Where a mortgagee parts with all his interest in the mortgage to a third person, but does not assign it, and he afterwards obtains his discharge under the insolvent laws, the mortgage will not pass to his assignees under those laws.

Where a contract for the sale of land in this state was made between two of its citizens, one of whom removed to Pennsylvania, where the contract was afterwards executed, by giving a deed and taking a mortgage on the premises to secure the payment of the purchase-money, in which mortgage the New York rate of interest was reserved, which was greater than that of Pennsylvania, it was held that the giving the deed and taking the mortgage was only a consummation of the original contract made in this state, and that the mortgage was not void for usury.

Whether a contract made in this state for the sale of lands in another state, upon credit, reserving interest at the legal rate of the state where the lands are situated, would be void if the rate of interest exceeded that allowed by our laws? *Quære.*[1]

As a general rule, interest is payable according to the laws of the place where the contract is made.

[*221]　*But where a contract is made in reference to the laws of another country, and is to be performed there, the interest is to be calculated agreeably to the laws of the place where the contract is to be performed.

Title to real estate can only be acquired or lost according to the law of the place where it is situated.

This rule applies to mortgages as well as to the deeds absolute.

The laws of other states must be proved, otherwise the courts of this state cannot take notice of them.

October 21st.　PREVIOUS to the year 1802, and while Elisha Kane lived at Albany, he made a contract with J. B. Nichols to sell to him lot No. 82, in Marcellus, and in pursuance of the agreement, Nichols paid to the agent of Kane in Albany, about $1,500 of the purchase-money. On the 23d of June, 1804, after Kane removed to Philadelphia, Nichols went there and obtained a deed of the lot, and gave back a mortgage for the balance of the purchase-money, conditioned to pay $1,155 in two years thereafter, with lawful

See *Chapman* v. *Robertson,* 6 Paige, 627.

interest of the state of New York thereon, payable annually. E. Kane was indebted to his brother, James Kane, and to J. & A. Kane in a considerable amount, and shortly after the execution of the bond and mortgage, they were sent to James Kane, at Albany, and he continued to receive the payments thereon of Nichols, and he credited the proceeds to the account of E. Kane. Previous to June, 1806, Nichols sold and conveyed to divers persons the whole of the mortgaged premises, except 150 acres, and the purchasers and their assigns have ever since occupied and possessed the same under those conveyances. On the 23d of March, 1820, Nichols mortgaged to the defendant, Monk, 80 acres of the 150 then belonging to him, to secure the payment of $369. In 1822, the owners of that part of the lot which had been conveyed by Nichols, made an agreement with James Kane, who then claimed to be owner of the mortgage, to purchase the same, for the purpose of protecting their titles, and enforcing the same against the 150 acres; and on the 4th of November, 1822, he procured an assignment from his brother Elisha, to Solomon Judd, of the bond and mortgage. Judd afterwards assigned the same to S. French and others, who subsequently assigned to the complainant. A suit was brought by the assignees in the *Supreme Court, in the name of Elisha Kane, on the bond; and in February, 1825, a judgment was recovered in that suit against Nichols, for the penalty of the bond, with costs. In July, 1825, the complainant filed her bill against the mortgagor, and against Monk, the mortgagee of the 80 acres, T. J. Nichols, a lessee of the 150 acres, and the judgment creditors of J. B. Nichols, to have the mortgage satisfied out of the remaining 150 acres, which, it was alleged, were amply sufficient for that purpose without resorting to the lands which had been previously sold and conveyed. The bill was taken *pro confesso* against the judgment creditors. The defendant, T. J. Nichols, claimed no interest in the premises, except as a lessee of the same, for three years, on shares. The defendants, Monk and J.

1828.

Hosford
v.
Nichols.

[*222]

B. Nichols, admitted the execution of the bond and mortgage, but insisted that the same were void because the rate of interest reserved exceeded the legal rate of interest in Pennsylvania. They also alleged, that in 1815, Elisha Kane failed, and assigned his property to assignees, and that the bond and mortgage were included in that assignment, and that he had no interest in the mortgage at the time of the assignment thereof to Judd. Monk also claimed to have the part of the 150 acres which was not included in his mortgage first sold, if a sale should be ordered.

*D. Kellogg*, for the complainant:—There is no evidence that the rate of interest in Pensylvania is less than in this state. The proof offered to establish this allegation of the defendants is parol. Such proof of a foreign statute is incompetent evidence. (*Kenny* v. *Van Horne and Clarkson*, 1 John. R. 394.) The defendants do not set forth the usurious agreement specially. This was necessary. (1 Saunders, 295, a. b.) The contract for the sale of the lot in question was made in this state, and in reference to the laws of this state. The rate of interest here must, therefore, govern. (*Fanning* v. *Consequa*, 17 John. R. 518; *Thompson* v. *Ketchum*, 4 John. R. 285.) Interest is to be calculated according to the laws of the place where the contract is made payable. (*Sir John Champant* v. *Ranelagh*, Precedents in Ch. 128; *Eakins* v. *East India Co.*, 1 Pr. Wms. 396; *Connor* v. *\*Earl of Bellemont*, 2 Atk. 382; Fonbl. 2, 242; 2 Burr. 1077; 3 Atk. 727.) Kane is an incompetent witness to impeach the bond and mortgage, a recovery at law having been had upon the bond, and its validity thereby established. (*Van Schaick* v. *Edwards*, 2 John. Cas. 355.) The legal and equitable interest in the bond and mortgage is in the complainant. The only evidence of the proceedings under the insolvent laws of Pennsylvania, and of the assignments by Kane under those laws of all his real and personal property, is parol, which is inadmissible. (*Fox* v. *Reid*, 3 John. R. 477; *Willoughby* v.

*Carleton*, 9 John. R. 136.) The assignments by Kane under the insolvent laws of Pennsylvania did not pass any interest in the bond and mortgage, they having been previously delivered by Kane to his brother for a valuable consideration, and his equitable interest therein having passed on that delivery. (*Runyan* v. *Mersereau*, 11 John. R. 534.) It was not necessary to make all the grantees of J. B. Nichols, parties to this suit. It is proper only to make such persons parties as are parties to the interest involved in the issue, and who must necessarily be affected by the decree. (*Wendell* v. *Van Rensselaer*, 1 John. Ch. R. 349; *Cockburn* v. *Thompson*, 16 Ves. 325.)

*J. R. Lawrence, F. G. Jewett and J. Rhoads* for the defendants:—The bond and mortgage in question were given in Pennsylvania, and a greater rate of interest was reserved thereon than was allowed by the laws of that state. They were, therefore, usurious and void. At all events, the legal rate of interest in Pennsylvania only can be charged. (*Van Schaick* v. *Edwards*, 2 John. Cas. 355; *Dewolf* v. *Johnson*, 10 Wheat. R. 367; *De War* v. *Span*, 3 Term R. 425.) The complainant took the assignment of the bond and mortgage as agent, or in trust for the grantees of J. B. Nichols. They ought, therefore, to have been made parties. Not having been made parties, the bill ought to be dismissed. (*Hopkins* v. *McLaren*, 4 Cowen's Rep. 677; *Malin* v. *Malin*, 2 John. Ch. R. 238; 7 John. Ch. R. 198, General Index.) All the interest of E. Kane in the bond and mortgage passed by the assignments made under the bankrupt law of the United *States, and the insolvent laws of the state of Pennsylvania. The complainant, therefore, acquired no title under the assignment to him. If the decree should be in favor of the complainant, that part of the lot not covered by the defendant Monk's mortgage ought to be first sold.

THE CHANCELLOR:—The objection for want of parties

[*224]

is not well taken.    Although French and others are inter-ested in the proceedings in this cause, they are not neces-sary parties.    Their assignment to the complainant is ab-solute and unconditional; and although by the covenant therein they are responsible to her in case she does not succeed in recovering the money on the mortgage, it would have been improper to have made them complainants. Neither was it necessary to make all the owners of the land covered by the mortgage parties to the suit.    It is stated in the bill, and admitted in the answers, that the one hun-dred and fifty acres remaining unsold is amply sufficient to satisfy the mortgage debt.    No question of contribution can arise, as by the settled law of the court that part of the premises must be first applied to satisfy the mortgage.    If the complainant chooses to rely upon that security alone, it does not lie with the defendants to object that she has omitted to increase the costs against them by unnecessarily making the owners of other parts of the lot parties to the suit.

The objection that the mortgage was purchased with moneys raised by the sale of the lands of Nichols, under a void execution, is not supported by the proofs in the case. There is no judgment, execution or sheriff's deed produced to support the allegation in the answer.    If the sale was regular, Nichols has no right to complain of the application of the purchase-money; and if the proceeding was void his title was not affected thereby, and he has no claim to the amount of the nominal bid.

The defendants have also failed in showing that nothing passed by the assignment of the mortgage to Judd.    The objection of the complainant to the parol proof of the as-signments by Elisha Kane is well taken.    The original as-signment should have been produced and proved by the subscribing *witness, or some evidence should have been given that it was impossible to obtain it.    But if such evi-dence had been adduced, I think there is sufficient testi-mony in the case to show that in 1815 the equitabl inter-

[*225]

est to the balance due on the mortgage belonged to James Kane, so that nothing could pass by the assignments under the insolvent laws of the United States, or of Pennsylvania. If so the complainant obtained both the legal and equitable title to the mortgage through the assignment made to Judd by Elisha Kane, with the assent of his brother, who had the equitable interest. As to the question of usury, I am inclined to think, under the circumstances, whatever may be the laws of Pennsylvania on the subject, that the mortgage reserving New York interest cannot be considered as usurious. In this case, the contract for the sale of the land was made in this state, and while both parties resided here. I think it is fairly inferable from the testimony that the subsequent giving of a deed and securing the balance of the purchase-money by a mortgage on the premises, was only a consummation of the original bargain made here, and not in pursuance of any new agreement to extend the time of payment.

Whether a contract made here for a sale of lands in another state, on credit, reserving interest at the legal rate of the place where such lands are situated, would be void, if such rate of interest exceeded the amount allowed by our laws, is a question which does not appear to be settled by any decision of our courts. The question was raised in *Van Schaick* v. *Edwards*, (2 John. Cas. 355,) and the judges were divided in opinion, and the cause was finally decided on another ground. In *Dewar* v. *Spark*, (3 T. R. 425,) the Court of King's Bench held that a bond given in England in pursuance of an agreement to give further time of payment for the purchase-money on a West India sale, reserving six per cent. interest, was usurious and void.

It is a general rule that interest is payable agreeably to the law of the place where the contract is made. But in *Fanning* v. *Consequa*, (17 John. R. 511,) the Court of Errors decided, that where a contract was made in reference to the laws of another country, and to be performed there,

*the interest was to be calculated agreeably to the laws of the country where the contract was to be performed.

It is a well settled rule, that any title or interest in land or real estate can only be acquired or lost agreeably to the law of the place where the same is situated.[1] And this principle applies as well to mortgages as to conveyances absolute, (*Cutler* v. *Davenport*, 1 Pick. R. 81.) If a statute of Pennsylvania should declare all deeds executed in that state void, wherever the lands might be situate, unless they were executed in the presence of two witnesses, can there be any doubt that a deed of lands in this state, executed there, in

[1] The case of *Chapman* v. *Robertson*, 6 Paige, 627, is so analagous, that a statement of the points on which it was decided will repay the trouble of insertion. Robertson, a resident of New York, applied to Chapman, at his residence in England, for a loan of money, upon the security of a bond and a mortgage on lands in New York and at the legal rate of interest in that state, and it was agreed that upon the return of Robertson to New York he should execute his bond and mortgage, and have the mortgage duly recorded in the county where the lands were situated, and that Chapman, on receipt of the bond and mortgage in England, should deposit the money loaned with the bankers of Robertson in London, for his use: the bond and mortgage were executed, and the money received. Held, that the mortgage was a valid security for the loan according to the laws of New York; and that upon a bill filed there to foreclose the mortgage, Robertson could not set up the usury laws of England as a defence to the suit. And that, although the construction and validity of a contract, which is purely personal, depends upon the law of the place where the contract is made, unless it is made in reference to the laws of some other place or country where it is to be performed; yet the transfer of lands or other heritable property, or the creation of any interest in, or lien thereon, must be made in conformity to the local laws of the place where the property is situated.

Mr. Story dissents from some of the principles advanced in this decision, see Conflict of Laws, sec. 293, c. 1.

"The law of the place," says Chancellor Kent, "where the contract is made is to determine the rate of interest, when the contract specifically gives interest; and this will be the case, though the loan be secured by a mortgage in lands in another state, unless there be circumstances to show that the parties had in view the laws of the latter place in regard to interest. When that is the case, the rate of interest of the place of payment is to govern." 2 Kent, 460. See also *D'Wolf* v. *Johnson*, 10 Wheat. 367; *Scofield* v. *Day*, 20 John. 102; *Thompson* v. *Powles*, 2 Simons, 194; *Robinson* v. *Bland*, 2 Burr, 1077; *Boyce* v. *Edwards*, 4 Peters, 111.

the presence of one witness only, would be valid if it was afterwards acknowledged and recorded here agreeably to our own laws? In the case before me, the mortgage, after its execution in Philadelphia, was duly acknowledged in this state before one of the judges of the county of Onondaga. Whatever, then, may have been the legal effect of its original execution at Philadelphia, by this subsequent act of the mortgagor it became a good and valid lien upon the land for the security of the purchase-money, and New-York interest, agreeably to the laws of this state. It is also too late for the mortgagor to object that the bond was illegal and void. An action has been brought against him in a court of this state, and the judgment obtained thereon is conclusive evidence against him as to the validity of the bond.

Again, there is no evidence in this case to show that the bond and mortgage were not both valid by the law of the state where they were originally executed. E. Kane testifies that at the time of their date, and for some years previous, six per cent. was the legal rate of interest in Pennsylvania. But it does not appear that any law existed in that state which prohibited the parties from agreeing upon a higher rate of interest, or declaring securities void in which a higher rate of interest was reserved. And courts of this state cannot take notice of the laws of other states unless they are proved in the same manner as other facts, (*Thompson* v. *Ketchum*, (8 John. 189; *Church* v. *Hubbart*, 2 Cranch, 186.)

*The result of this opinion is, that the mortgage, in the hands of the complainant, is a valid and subsisting lien on the premises; and she is entitled to satisfaction of the amount due thereon, with interest, at the rate of seven per cent., after deducting the payments which have been proved, and the costs of this suit, out of that part of the 150 acres remaining unsold, and described in her bill of complaint, which is not covered by Monk's mortgage; and if that is insufficient, the 80 acres covered by Monk's mort-

1828.

Hosford
v.
Nichols.

gage must be sold, and the deficiency satisfied out of the proceeds thereof.

There must be a reference to a master to compute the amount due to the complainant on her bond and mortgage, and to the defendant Monk, on his; and on the coming in and confirmation of the master's report, the 150 acres, or so much thereof as may be necessary, must be sold in manner aforesaid on the usual notice, and out of the proceeds of the sale the master must pay to the complainant the amount reported due to her, with interest and costs; and the defendant Monk will be entitled to his costs out of the residue. And if the 80 acres is sold, he will also be entitled to have the surplus, or so much thereof as is necessary, applied to satisfy the amount due on his mortgage; and the residue of the purchase-money, if any remains, must be brought into court to abide the further order thereof. The master to execute deeds to the purchasers; and the defendants, and all who have come into possession under them, must deliver up to the purchasers peaceable possession of the premises, on producing the master's deed and a copy of the order confirming the report of the sale.