Daly, Ch. J.
The case now before us is not, I think, distinguishable from Jewell v. Wright (30 N. Y. 359), and if the decision of the court of appeals, in that case, is to be followed, it would be decisive of this. It was held, in Jewell v. Wright, that a note drawn, dated, payable and delivered to the payee in New York, and taken by him to the State of Connecticut, where it was discounted at a rate of interest allowed by law in Connecticut, but greater than is allowed in this State, is to be regarded here as usurious and void, and that no action here can be maintained upon it.
The decisions of the court of appeals, the court of last resort of this State, which is clothed with the authority of revising the decisions of all subordinate tribunals in the State are, in the exposition of the law, of controlling authority in this court; and the case must be a rare and exceptional one in which we would feel at liberty not to follow the decision of that court; where the facts were analogous, and to which the decision of the higher tribunal applied.
“A solemn decision upon a point of law,” says Chancellor Kent (1 Com. 475), “arising in any given case, becomes an authority in a like case, . . . and the judges are bound to follow that decision so long as it stands unreversed, unless it can be shown that the law was misunderstood or misapplied in that particular case.” And he remarked, in addition, that “When a rule has been once deliberately adopted and declared, it ought not to be disturbed, unless by a court of ap *85 peals or review, and never by the same court, except for very cogent reasons, and upon a clear manifestation of error ; and if the practice were otherwise, it would be leaving us in a state of perplexing uncertainty as to the law.”
This is the general, and I may say the almost universal rule, but there is no general rule without its exceptions ; and to determine whether the decision of the court of appeals in Jewell v. Wright may or may not be regarded as coming within this very exceptional exercise of discretion, it would be necessary to examine the case, and to point out the views that have been expressed respecting it, by other courts in this State, in refusing to follow it.
The learned judge who delivered the opinion of the court in Jewell v. Wright disposed of a question of great commercial importance, not by an examination of it as a question of law, deducing his conclusions from the application of acknowledged legal rules and principles ; but simply by referring to prior decisions in this State, which neither individually nor collectively warranted the conclusion predicated upon them ; whilst his attention does not appear to have been called to what had been previously decided by Chancellor Walworth in Chapman v. Robertson, 6 Paige, 634, —that a contract made in this State for the loan of money upon a mortgage of lands in this State, which would be valid if the money was payable to the creditor here, would be no violation of the English usury law, because the money was payable to the creditor in England, and at a rate of interest not allowed by the laws of England,—and the statement of the same able jurist in Pratt v. Adams, 7 Paige, 638,—that notes made in this State and payable at a bank in this State, but discounted by a bank in Pennsylvania, were, as respects the taking of usury, to be governed by the laws *86 of Pennsylvania,—which is exactly the case now before us.
The learned judge in Jewell v. Wright (supra), referred to Bowen v. Newell (13 N. Y. 290), which simply decided that the law of the place where the note is made payable is to control, in respect to the allowance of days of grace or not; the note in that case having been drawn, indorsed and negotiated in this city, but payable in Connecticut,—which is simply a rule of interpretation as to the intent of the parties, and involves the consideration of no rule as a test of the validity of a contract. Everett v. Vendryes (19 N. Y. 436), simply holds that the law of the place where the bill is payable, Ifontrols as to the liability of the. drawer to the indorser.
These cases nierely applied familiar rules in the interpretation a£ contracts, and in no way presented the question of a contract which would be valid by the laws of one State and void by laws of another.
The other cases referred to by the judge do pass upon such a question, and I will briefly state what was determined in them.
All that was decided in Davis v. Garr (6 N. Y. [2 Seld.] 129), was that a note, made in another State, which bears a higher rate of interest than is allowed by the statute of this State, is not usurious, unless it is shown that the law of the place where the note was made prohibited such a- rate of interest.
In Cutler v. Wright (22 N. Y. 472), Judge Davies (whom it may be remarked delivered the dissenting opinion in Jewell v. Wright),—Held, that a note dated and made payable in Florida, although actually made in this State, was to be regarded as a Florida contract, and that an allegation that it was usurious by the laws of this- State was immaterial. This was assented to by the majority of the court, and the case-was decided upon the ground that it was incumbent *87 upon the defendant to allege and prove that the note was usurious by the laws of Florida.
In Pomeroy v. Ainsworth (22 Barb. 127), the parties made the argument expressly in reference to the laws of Vermont, as to interest; and it was held that its validity as respects usury depended upon the law of Vermont.
In Curtis v. Leavitt (15 N. Y. 227), the contract for the sale of the bonds was made in England, the money advanced on them was paid there ; the purchaser a,t the time of the purchase resided there and continued to reside there; and it was held that this made it an English contract, and that the question of usury was to be determined by the law of England.
In Jacks v. Nichols (5 N. Y. [1 Seld.] 178, 183), the original loan was effected in New York, and the funds which had been transmitted from Savannah were in New York when the loan was made, the borrowers being residents of New York, and the lender a resident of Savannah. The loan was twice renewed. It did not appear with certainty where the agreement for the second renewal was made, but the lender, the defendant, was at the time temporarily at Bridgeport, in Connecticut, and the renewal notes which were made in and dated New York were sent to the defendant at Bridgeport, with a note as security, who upon receiving them, sent back the previous notes to the borrowers in New York. As neither of the parties resided in Connecticut, and the defendant was there but temporarily, having no place of business, the court regarded the transaction merely as a renewal of a New York contract. As to the continuance of a new note, with additional security, of a loan originally made in. this State, at an usurious rate of interest, in which nothing was done in the State of Connecticut but to send the note in renewal to the lender, who was temporarily there, who npon receiving it sent back the
*88 original note to the parties in New York, there is nothing in the decision of these cases, or dedncible from them, and they are all that are referred to by the learned judge, warranting the conclusion that a note, :dated and payable in New York, and discounted in another State, at a rate of interest allowed by the laws of that State, is a violation of the usury laws of this State, because the sum received or taken is greater than is allowed by the laws of this State. The precise .point decided in Jewell v. Wright came up before the superior court of Buffalo in Bowen v. Bradley (9 Abb. Pr. N. S. 395), and the court unanimously refused to follow it, the judge who delivered the opinion of the court, Mastee, J., declaring that the decision was contrary to law, sound reason and the necessities of commerce—strong language to be applied by a subordinate court to the decision of a higher tribunal; but it is the language of a very able judge, fully impressed, as his opinion shows, with the respect that was due to the appellate tribunal, and of the duty of enforcing its decisions, and therefore entitled to great weight. It is only in a very exceptional, ill-considered, and clearly erroneous decision that any subordinate court would assume such a responsibility. “Precedents,” says Lieber, “against law and reason, must be set aside. If we are convinced, after patient inquiry, which includes a thorough knowledge of the subject matter, that we ought to deviate from a former decision, we act wrong in perpetuating that which is unjust and injurious. A frivolous or hasty application of this principle is highly dangerous, yet it is not on that account the less true” (Legal Hermeneutics, &c., 219, 220).
In Opdyke v. Merwin,* decided in the present year at the March general term of the supreme court of this *89 district, as we are given to understand, the same question as in this case now before us, was presented, and the court as in Bowen v. Bradley, supra, declined to follow the decision in Jewell v. Wright; on the ground that it was evidently erroneously determined.
In the First National Bank, &c. v. Morris, 1 Hun, 681, Judge Daniels was of opinion that the decision in Jewell v. Wright was wrong, but doubted if a proper sense of decorum was consistent with the position that it could be disregarded, as long as it had not been overruled by the court pronouncing it; and the very judge who in Jewell v. Wright delivered the opinion of the majority of the court, Judge Ingraham, afterwards with his associates, in the language of Judge Daniels, “silently disregarded it” (in the Bank of Georgia v. Lewin, 45 Barb. 340); and that he considered the decision to have been wrong, would appear from his remark in a late case (Hildreth v. Shepard, 65 Barb. 371), that it would have been more simple and equally consistent with equity and justice to have adopted the plainer rule of lex loci contractus, as governing in all cases of this character, but said that the remedy was with the court of appeals. Finally, the supreme court of the United States, in Tilden v. Blair (21 Wall. 245), held that a draft accepted and payable in New York, and sent to Illinois to be negotiated in that State, was an Illinois contract, to be negotiated at the rate of interest allowable by the laws of interest there ; and that the rights and liabilities of the parties were to be determined according to the laws of that State.
The note in the present case was given by the defendant in renewal of the unpaid balance of a prior note made by the defendant, which prior note was discounted by the plaintiffs at their bank at Honesdale, Penn. The transaction was this :
The defendant, a resident of Middletown in this *90 State, made a note for $10,000 to the order of one Smith, which was payable at the First National Bank, Middletown, where the defendant resided, and indorsed the note to one Miller ; Smith and Miller being then residents of this State; and Miller got the note discounted at the plaintiff’s Bank at Honesdale, in Pennsylvania, at a rate of interest allowed by the law of Pennslvania, but greater than is allowed in this State. This $10,000 note was renewed by other notes, some of which were paid and others renewed, until finally the note in suit, which was for $2,000, was given by the defendant in renewal of a prior note for that amount, and represented the final balance that was due upon the original transaction.
The defendant applied to the cashier of the plaintiffs’ bank for a renewal of the previous $2,000 note for six months, and requested the cashier to send a new note for him, the defendant, to sign, drawn upon him at Middletown ; and the cashier, in compliance with this request, wrote the promissory note in suit and sent it; which the defendant, upon receiving, signed and sent back by mail to the cashier, who by mail returned to the defendant the prior $2,000 note.
It is urged that there is a material distinction between this case and Jewell v. Wright; as the note in that case was delivered to the accommodation payee in this State, whereas in the present case the note was by the maker himself sent out of the State to be delivered to the payee in Pennsylvania.
The distinction is not material. A deposit of a letter containing the note in the post-office in this State, addressed to the cashier to whom the note was payable (having been done by the payee’s direction), was a delivery of the note to the payee (Mactier v. Frith, 6 Wend. 103 ; Vassar v. Camp, 11 N. Y. 441; Trevor v. Wood, 36 Id. 307).
The note was payable to the order of H. C. Hand, *91 cashier, and although the bank of which he was the cashier is not named, it was in judgment of law, payable to the bank of which he was cashier; and it appearing that he was the cashier of the plaintiffs’ bank, no indorsement by him was necessary to transfer the note to the bank, and give the plaintiffs title (First National Bank v. Hall, 44 N. Y. 395; Bank of New York v. Bank of Ohio, 29 Id. 619; Baldwin v. Bank of Newbury, 1 Wall. 240; Commercial Bank v. French, 21 Pick. 486). He, as the agent of the bank, sent it by post to the maker, to be signed and returned, and when the maker signed it and deposited in the post-office at Middletown, in this State, the letter containing the note addressed to the plaintiff’s cashier at Honesdale, Pennsylvania, it was a delivery of the note to the plaintiff. There is, therefore, no essential difference between the two cases.
I think that instead of applying to this case the decision of the court of appeals in Jewell v. Wright, we ought to do as was done in the previous case of Bowen v. Bradley, supra, and Opdyke v. Merwin, supra. I wholly fail to see how a note, discounted by a bank in Pennsylvania, in the regular course of business, at a rate of interest allowed by the law of Pennsylvania, is a violation of the usury law of this State, because the note was made by a resident of this State, and is payable here. Where the law regulating the rate of interest is different in different States, the law of the State where the interest was reserved and taken upon discounting the note, where the consideration was given and received which created the contract, should govern in determining whether the rule of interest taken was usurious or not. Judge Davies, in the dissenting opinion in Jewell v. Wright, which will be found in a note to Bowen v. Bradley (9 Abb. Pr. N. S. 395), in respect to the distinction that the note was made payable in this State, pertinently asks, “ What *92 does the performance of the contract require to be done in this State ? It is to repay here, the money, which, by the laws of the State of Connecticut, the plaintiff might legally demand and collect there. No law of this State is violated by the use of the power of the court here, to enforce a contract lawful in the place where it was made. There is nothing on the face of the contract showing an intent to do any act within this State prohibited by its laws.”
The law as it was understood, and, I might say settled, before Jewell v. Wright, was that the law of the place where the contract was made, determines as to the rate of interest, unless the contract is made with reference to, or is to be executed in another place, when the law of that place governs (Fanning v. Consequa, 17 Johns. 511; Dewar v. Span, 3 T. R. 425; Connor v. Bellamont, 2 Atk. 382; Stapleton v. Conway, 3 Id. 727; Andrews v. Pond, 13 Pet. 65, 78 ; Hosford v. Nichols, 1 Paige, 225 ; Story on Conflict of Laws, §§ 292, 293). Thus, if money is loaned at a particular place, it bears interest at the rate there allowed by law, but if payable elsewhere it bears interest at the rate allowed in the place of performance, as the law presumes that the parties knew the rate of interest at the place of performance, and intended that that rate should govern (Scofield v. Day, 20 Johns. 102; Pomeroy v. Ainsworth, 22 Barb. 119; Boyce v. Edwards, 4 Pet. 111; Mullin v. Morris, 2 Burr. 2; 2 Parsons on Notes and Bills, 376, and cases there cited). This, where nothing is said upon the subject, is the rule which regulates as to the rate of interest to be allowed, but is by no means necessarily the rule in respect to the taking of usurious interest.
Thus, Chief Justice Taney, in Andrews v. Pond (13 Pet. 78), in view of this distinction says, that “ The question is not, which law is to govern in executing the contract; but which is to decide the fate of a seen *93 rity taken upon an usurious agreement, which neither will execute.”
Unquestionably, it must be the law of the State where the agreement was made and the instrument taken to secure its performance. A contract of this kind cannot stand on the same principles as a bona fide agreement made in one place to be executed in another.
In the last mentioned cases, the agreements were permitted by the lex loci contractus, and will even be enforced there, if the party is found within its jurisdiction.
But the same rule cannot be applied to contracts forbidden by its laws and designed to evade them. In such cases the legal consequences of such an agreement must be decided by the law of the place where the contract was made. If void there, it is void everywhere, “and as a further illustration of this distinction it was held that where a loan was made in New York, and the interest was paid there, and for the payment of the principal and of the interest so taken, a bill was given, payable in Alabama, that it was the law of New York and not of Alabama, that was to determine the bill was usurious or not (Hanrick v. Andrews, 9 Port. 9). If it is the rule that if when the contract is void by the law of the place where it was made, it is void elsewhere, the converse of that rule should be and is, that if it is valid there, it is valid elsewhere (Potter v. Tallman, 35 Barb. 187; 2 Kent Com. 454, 455. If, because it is usurious in the place where the contract is made, it cannot be enforced anywhere, it should be equally a rule that if the interest taken at the inception of the contract in the place where it was made, was allowed by law, the contract should be enforceable anywhere, for the interest then cannot be said to have been taken in violation of the usury laws of any other State or country.
The contract in this case must be regarded as a con *94 tract made in Pennsylvania; for as between the maker and the payee, there was no consideration given for the note. The payee was to give the maker certain stocks, but they were not given when the $10,000 note was delivered to the payee, nor has he ever given the stock as appears by the evidence.
The note, therefore, was not enforceable by the. payee against the maker, being void for want of con-. sideration, and it had, and could have no effect as a contract, until it was discounted by the plaintiffs, at their bank in Honesdale, Pennsylvania, when upon discounting it, interest, as allowed by the laws of Pennsylvania, was taken by them for the time it had to run.
It was not until they gave the full consideration for it, deducting the rate of interest allowed by the laws of Pennsylvania, that it had any binding force or obligation upon the parties as a contract, and as this took place in the State of Pennsylvania, the contract (for the enforcement of the unperformed portion of which this action was brought), was not a New York contract, but a contract made in Pennsylvania, though the note was made in New York, and was payable there (Hyde v. Goodnow, 3 N. Y. [3 Coms. ] 266 ; Cook v. Litchfield, 5 Sandf. 337, 338); in which latter case, Dube, J., declared that it is not by the mere writing of the names on the paper that the contract is created ; and it matters not' when or where this is done, for there is nothing binding until it is transferred to a third person, with the intent of enabling him to enforce payment, that the place of this effectual transfer is the place of the contract, and the law which there prevails is the one which governs.
When the plaintiffs, in the present case, received the note, paying full consideration for it, it was, in their hands, a note valid by the laws of Pennsylvania, and being enforceable there, as a valid contract, it should be enforceable everywhere, and if action had *95 been brought upon it in this State, I wholly fail to see how the transaction by which it had its inception as a valid contract in Pennsylvania, could be any violation of our usury laws.
If the broad ground had been taken in the beginning that our usury laws prohibited the enforcement of any contract by which the parties had contracted for the payment of a greater rate of interest than seven per cent, per annum, and that all such contracts, whether made in other States, or not, were in this State null and void, the statute would have been easy of application. But it has been repeatedly held, as the authorities I have referred to show, that it does not apply to contracts made in other States bearing a higher rate of interest than is allowed in this State, or to contracts made here, but made with reference to the laws of other States, even though money is advanced or is payable here (Pratt v. Adams, 7 Paige, 129 ; Pomeroy v. Ainsworth, 22 Barb. 128, 129).
The true test is, whether, from the nature of the whole transaction, the intent was to violate the usury laws of this State, and what was done in or with respect to another State was a mere cover 'or pretext by which to evade the laws of this State.
Where it is apparent, however, that such was not the intent, as where a bank in the regular course of business, discounts a note which previously had no validity or effect as a contract, at the rate of interest which is allowed by the laws of the State where the bank is situated, the transaction is not usurious, no matter where the note was made, or where it is payable.
The $2,000 note on which this action is brought, was given in renewal of what remained due upon the note which the plaintiffs lawfully acquired in Pennsylvania ; and if, as was held in Jacks v. Nichols (supra), the renewal of the usurious loan in New York by the delivery of a new note and additional *96 securities to the lender in Connecticut, and the return by him from there of the previous securities, did not make the renewed note a Connecticut transaction or contract, but simply a continuation of the usurious one in New York ; so in this case the delivery of the note in suit, by depositing it in the post-office here, addressed to the cashier of the plaintiffs’ bank in Pennsylvania, was but a continuation of a valid contract made in Pennsylvania ; it being as much a continuation in the one case as in the other, for if the renewed note in Jacks v. Nichols (supra), was not a Connecticut transaction or contract, neither is the $2,000 note here a New York contract.
It is simply a note drawn payable here and sent by post to Pennsylvania in renewal of a valid contract made there.
The great importance to commerce of giving full effect in all other States to' transactions and commercial papers, which are valid in the State where the paper is negotiated, and takes effect as a contract, and the serious results in a commercial point of view which would follow the carrying out of the decision of Jewell v. Wright to its consequences, are, to my mind, so apparent, that I think the defendant should be left, after what has been stated in respect to Jewell v. Wright, to the question, whether that decision is to be adhered to or not, to the court of appeals, if so advised.
If the court of appeals adhere to it, he will have the benefit; and it would be our duty thereafter to regard it as binding upon us as the law of this State.
In respect to the question raised upon this appeal, as to the want of consideration to the extent of the amount of this note, in the discounting by the bank of the original note, there are no facts, in my judgment, which show any such partial failure of consideration.
The judgment entered on the report of the referee should therefore be affirmed.

 13 Hun, 401.