## MUTUAL LIFE INS. INS. CO. v. RICHARDSON.

(Circuit Court, W. D. Pennsylvania. November 9, 1896.)

CONSTITUTIONAL LAW — OBLIGATION OF CONTRACTS — CANCELLATION OF MORTGAGES.

On July 30, 1878, B. gave to a New York insurance company a mortgage on land in Washington county, Pa., to secure payment at the company's office in New York City of $5,500 with 7 per centum interest, the then legal rate in the state of New York. On May 19, 1896, the administrator of B. instituted a proceeding in the court of common pleas of said county of Washington, under the Pennsylvania act of June 20, 1883, for the satisfaction of the mortgage; and after constructive notice to the insurance company by newspaper publication in said county, upon an ex parte hearing (the company not appearing), the court decreed satisfaction of the mortgage upon payment into court of the balance due as claimed by the petitioner, such balance being ascertained by computing interest at the yearly rate of six per centum. *Held*: (1) That said act of June 20, 1883, could not be construed as applicable to this mortgage, for to give it such retrospective effect would be to impair the obligation of the contract by changing the place of payment. (2) That the decree, being beyond the power conferred by the act, and not within the jurisdiction of the court, was void, and furnished no ground of defense to a scire facias on the mortgage from the circuit court of the United States.

Sur Rule for Judgment for Want of a Sufficient Affidavit of Defense.

J. W. Collins, for plaintiff.
Crumrine & Patterson, for defendant.

ACHESON, Circuit Judge. This suit is a scire facias by the Mutual Life Insurance Company of New York against S. C. Richardson, administrator of James Britton, deceased, with notice to the Carrie Furnace Company, terre-tenant, upon a mortgage from Britton to the plaintiff, dated and given on July 30, 1878, on a tract of land in Washington county, Pa., to secure the payment by Britton to the insurance company, at its office in the city of New York, of a debt (evidenced by his bond of even date) of $5,500, on December 1, 1879, and also interest at the rate of 7 per centum per annum, payable half-yearly, on the 1st day of every June and December, until the principal should be paid. The plaintiff's affidavit of claim admits a credit of $600 paid upon the principal of the debt, and also the payment of interest up to June 1, 1896, at the stipulated rate of 7 per centum per annum, which was the legal rate of interest in the state of New York at the date of the mortgage and accompanying bond. The defendant sets up in bar of the suit a proceeding in the court of

common pleas of Washington county, Pa., under an act of assembly approved June 20, 1883 (P. L. 138; 1 Purd. Dig. 658, pl. 161), which provides as follows:

"In all cases where the legal holder or holders of a mortgage shall reside without the jurisdiction of this commonwealth, or shall have removed therefrom without leaving a known duly authorized attorney to enter satisfaction on the record of such mortgage, on full payment of the principal and interest, and all proper legal charges being made, it shall and may be lawful for the owner or owners of the mortgaged premises, or any person interested, to apply by petition to the court of common pleas of the county in which the mortgaged property is situated, setting forth the premises, and also the name and whereabouts, if known, of the holder or holders of said mortgage, if known, and if not known, then stating the facts, and that the principal of the mortgage-debt is overdue by expiration of the time therein limited, and not by reason of default in the payment of the interest; whereupon the said court shall make such order, for giving notice of said petition, and of the time of the hearing thereof to all persons interested, in such manner as the said court shall direct, either by personal service, or publication, or otherwise; at the time therein specified, or at any subsequent time, on due proof being made of the truth of the said petition, the said court, upon payment being made into court of the said amount of the principal and interest, and all other moneys found to be due and owing on said mortgage, shall order and decree that the recorder of deeds of the proper county shall enter full satisfaction upon the margin of the record of such mortgage recorded in his office, which shall for ever thereafter discharge, defeat and release the same, and shall likewise bar all actions brought or to be brought thereupon, as fully as if such payment had been made to the lawful owner or owners of such mortgage-debt, and as if such owner or owners had entered such satisfaction of record."

The proceeding in the court of common pleas began by the petition of Richardson (the owners of the mortgaged premises joining in the prayer thereof), presented May 19, 1896, reciting the mortgage, and setting forth that the balance due thereon did not exceed the sum of $3,347.47; that the owner of the mortgage, the insurance company, was without the jurisdiction of the commonwealth, and had no authorized attorney to enter satisfaction on the record of the mortgage upon the payment thereof,—and praying that the insurance company be required to appear in court and show cause why the petitioner should not be permitted to pay the sum of $3,347.47 into court, in full satisfaction of the mortgage, and that upon such payment into court the court would order the recorder of the county to enter satisfaction of the mortgage upon the record. Upon the presentation of the petition the court fixed June 8, 1896, for hearing the same, and directed the prothonotary to give notice of the filing of the petition and of the day of hearing to the insurance company by publication for three weeks in one newspaper printed in said county, "a copy of the said newspaper containing the notice to be sent by mail to the Mutual Life Insurance Company of New York." On June 8, 1896, upon proof made of notice given agreeably to the previous order of the court (the insurance company not appearing), and after an ex parte hearing of the petitioner, the court made a decree that the amount due on the mortgage was $3,248.95, and directing that upon payment into court of that amount "the recorder of deeds of the said county of Washington, Pennsylvania, shall enter full satisfaction upon the margin of the record of said mortgage, recorded in his office in Mortgage Book No. 8, p. 260, which satisfaction shall forever thereafter discharge, defeat, and release said mortgage from

said mortgaged premises, and shall likewise bar all actions brought or to be brought thereupon, as fully as if such payment had been made to the said the Mutual Life Insurance Company of New York, and as if the said Mutual Life Insurance Company of New York had entered such satisfaction of record." Accordingly, upon the payment on June 8, 1896, of the sum of $3,248.95 into court, the recorder entered upon the margin of the record of the mortgage full satisfaction thereof.

The exemplification of this proceeding, attached to the affidavit of defense as part thereof, shows that, in fixing the balance due on the mortgage at the sum of $3,248.95, interest was computed at the rate of 6 per centum per annum only, instead of at the contract rate of 7 per centum. The exemplification also shows this remarkable fact: That after the filing of the petition, and during its pendency, to wit, on June 1, 1896, the petitioner, or some one in his behalf, transmitted by draft to the Mutual Life Insurance Company, at the city of New York, the sum of $171.50, being the half-yearly installment of interest, at the contract rate, falling due June 1, 1896, on $4,900, the balance of the principal of the mortgage debt after crediting the $600 which had been paid thereon. It may be assumed that the attention of the court was not called to this misleading act, which was so well calculated to lull into a false security the insurance company. It is probable, also, that the court was not fully advised as to the terms of the bond and mortgage with respect to the place of payment, and the rate of interest reserved. Certainly, it is a well-established rule that the rate of interest, in the absence of stipulation, is to be determined by the law of the place where the contract is to be performed, and that that rate may be expressly reserved, though it exceed the rate allowed by the lex loci contractus, or by the law of the forum. Archer v. Dunn, 2 Watts & S. 327, 364; Wood v. Kelso, 27 Pa. St. 241; Fanning v. Consequa, 17 Johns. 511; Andrews v. Pond, 13 Pet. 65, 77, 78; Scotland Co. v. Hill, 132 U. S. 107, 117, 10 Sup. Ct. 26. It must be conceded, however, that, if the court of common pleas of Washington county had jurisdiction to make the decree set up in bar of our writ of scire facias, that decree cannot be impeached collaterally for mere error, and that it must be held conclusive here of the rights of the parties. Had the court lawful jurisdiction to make the decree?

Assuming that a proceeding under the act of June 20, 1883, is in the nature of a proceeding in rem, and that constructive notice by publication may bind a nonresident of the state, whose whereabouts is not known, was such service good in this instance, where it was known and disclosed that the office of the insurance company was in the city of New York? The act, it will be perceived, contemplates two classes of cases (one where the residence of the absent holder of the mortgage is known, and one where it is not known), and provides two modes of notice (personal notice and constructive notice, by publication or otherwise). It is urged that the fair meaning of the act is that, if the residence of the absent holder of the mortgage is known, there must be personal notice. Such

a construction of the act, it is claimed, does no violence to its language, promotes its true intent, and subserves the ends of justice. The argument in favor of this view has much force, but my conclusion with respect to another jurisdictional objection renders it unnecessary for me to pass upon the sufficiency of the notice.

The mortgage, it is to be observed, was executed several years before the passage of the act of June 20, 1883. Now, by the terms of the mortgage and its accompanying bond, the money thereby secured was made payable to the Mutual Life Insurance Company, "at their office in the city of New York, on the joint receipt of their president and secretary, and not otherwise." This was the contract of the parties, and they had a perfect right to make it. The provision as to payment was entirely reasonable and obligatory. The mortgagee did not undertake to keep an attorney in Pennsylvania to receive the money and enter satisfaction on the record of the mortgage upon payment. The insurance company was not bound to accept payment elsewhere than at its office in the city of New York. No valid tender of the money could be made elsewhere. The place of payment was a material part of the contract. No subsequent state law could impair the obligation of the contract in respect to the place of payment.

The invalidity of a state law impairing the obligation of a contract does not depend on the extent of the change which the law effects in the contract. Green v. Biddle, 8 Wheat. 1, 84. "One of the tests that a contract has been impaired is that its value has, by legislation, been diminished. It is not, by the constitution, to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation, dispensing with any part of its force." Bank v. Sharp, 6 How. 301, 327. The obligation of a contract includes everything material within its scope, whether relating to the undertakings therein contained, or to the means for the enforcement thereof. Edwards v. Kearney, 96 U. S. 595; McGahey v. Virginia, 135 U. S. 662, 10 Sup. Ct. 972. A state statute authorizing a redemption of mortgaged property, in two years after the sale, under a decree by bona fide creditors of the mortgagor, has been adjudged to be unconstitutional and void as to sales made under mortgages executed prior to the date of its enactment, as impairing the obligation of the contract. Howard v. Bugbee, 24 How. 461.

It seems to me, then, that the act of June 20, 1883, cannot be construed as covering the mortgage here sued on. To give it such a retrospective effect clearly would be to impair the obligation of the contract between these parties. It is to be noted that it was not alleged in the petition to the court of common pleas of Washington county, nor is it pretended here, that a tender had been made to the insurance company at its office in the city of New York, or that a tender to the company was ever made anywhere. The position of the defendant is that, without compliance, or attempted compliance, by the mortgagor, or those claiming the mortgaged premises under him, with the terms and conditions of the mortgage, by mere force of a subsequent state statute a change in the place of perform-

ance of the contract was effected, and that thereby the money became payable in the county of Washington, Pa., instead of at the stipulated place of payment, in the city of New York. This was the exact result accomplished in and by the proceeding in the court of common pleas of Washington county, if that proceeding be sustained. But in my opinion it cannot be sustained. The act under which the court proceeded has no application to this mortgage. The decree of satisfaction, then, has no binding force, because the court making it had no jurisdiction of the subject-matter. The decree being beyond the power conferred by the act of June 20, 1883, and not within the jurisdiction of the court, is void, and furnishes no ground of defense to this suit. U. S. v. Walker, 109 U. S. 258, 3 Sup. Ct. 277. The rule for judgment is made absolute.