W. S. TOWNSEND, ADMINISTRATOR OF A. G. BRITTON *v.* CHARLES H. RILEY.

The parties to a contract made in one State and payable in another, may lawfully stipulate for the rate of interest allowed in either, provided it be done in good faith, and not as a cover for usury.

Therefore, where a promissory note was made payable in one State, and, after its maturity, the maker, in another State, where he had his domicil, agreed to pay the lawful rate of interest of the latter State, upon such note, it was *held*, that such agreement was not usurious, although the rate of interest was greater than in the State where the note was originally payable, unless the arrangement was made merely as a cover for usury.

Where, upon a note payable with interest annually, payments are made of sums less than the interest due, the surplus of interest can in no case be taken to augment the principal.

For the detention of the annual interest after it is due, simple interest alone is to be computed.

Where interest annually is stipulated, payments are to be applied, first, to the interest on the annual interest, then to the annual interest itself, and the remainder to the principal.

In all cases general payments are to be applied in the first place to the interest due, whether the agreement be for simple or annual interest, and then to the principal.

Upon a note with interest annually, the computation at the end of the year should not be with rests on account of intermediate payments; but if such intermediate payments were on account of the interest accruing, but not yet due, they should be deducted at the end of the year, but without interest upon them.

Where a note bears simple interest, and yearly payments are made of sums just equal to the interest, it is not correct to cast the interest upon such payments to the time of the final adjustment, as in process of time the whole debt would thereby be extinguished without the payment of any principal whatever, but the payments should be applied at the time they were made.

THIS is a writ of review of a writ of entry. The original action was brought by T. W. Little, administrator of the estate of said Britton, against said Riley, to foreclose a mortgage upon a farm in Orford in this county, executed November 20, 1837, by one Alexander S. Riley to said Britton, to secure payment of said Alexander's note of the same date for $2000, payable to said Britton, or order, in two years from date, at the Grafton Bank, in Haverhill, N. H., with interest annually. The original writ was entered at the April Term, 1859. Judgment was rendered at the October Term, 1861, and the writ of review was made returnable at the March Term, 1863, since which time said Little has died and said Townsend, administrator de bonis non of said Britton's estate, has become a party as defendant in review. On said note were the following indorsements, viz: October 23, 1849, $967.22; February 22, 1853, $500.00; June 27, 1854, $500.00; July 10, 1855, $500.00; August 30, 1855, $600.00, and June 3, 1856, $1250.00. And it appeared that there was paid upon said note, October 23, 1845, but not indorsed thereon, the further sum of $70.00.

The amount found due upon the mortgage note at the former trial, which was at the October Term, 1860, was $918.84.

The trial at this term was by the court instead of the jury, the parties having elected so to try the cause. It appeared that said Charles H. Riley was in possession of the demanded premises at the commencement of the original action. It also appeared that on the 30th of August, 1855, said Alexander, by warrantee deed, conveyed two undivided third parts of the demanded premises to said Charles, and the other

third to a sister of said Alexander, and that said deed was recorded Sept. 5,/1855, and that on the 12th of September, 1855, said Charles and his sister re-conveyed the same to said Alexander by their respective quitclaim deeds of that date, which were not recorded until the 16th day of October, A. D. 1860.

The conveyances from Alexander to Charles H. and his sister, were without consideration. It did not appear that said Alexander had at any time assumed the defense of the action or been notified to do so; he was offered by said Charles as a witness, and was objected to as incompetent by said Townsend. A release executed to him by said Charles was then produced of which the following is a copy:

"Know all men by these presents, that I, Charles H. Riley of Orford, county of Grafton, State of New Hampshire, in consideration of the sum of one dollar, to me paid by Alexander S. Riley of said Orford, do hereby release and discharge the said Alexander from any and all claim and damage which I have or may have upon or against him by reason of any and all of the covenants contained in a certain deed from said Alexander to me of a certain farm in Orford, being the same farm on which I now live, said deed being dated the 30th day of August, A. D. 1855, and acknowledged the same day, and also from any and all claim or demand which I have or may in any way have, against said Alexander by reason of said deed, and also from any and all claim or demand which I have or may have against said Alexander by reason of the suit now pending in the Supreme Judicial Court for Grafton county, trial term, in favor of T. W. Little, administrator, vs. me, meaning for the costs of said suit, and the expenses of carrying it on, as well as for the subject matter thereof, and all liabilities of said Alexander to me on account thereof. Witness my hand and seal this ninth day of October, 1860.

Witness—DAVID R. LANG,　　　　　CHARLES H. RILEY. [L.·S.]
P. C. KENYON.

Grafton ss. Nov. 14. Personally appeared the above Charles H. Riley, and acknowledged the above as his voluntary act and deed.
Before me,　　　　　DAVID R. LANG, *Justice of Peace.*"

And said Alexander was, thereupon, permitted to testify, said Townsend still objecting, and he testified that at the time of making said note it was agreed between him and said Britton that said Alexander should pay said Britton, and that he did then pay him on said note, two per cent. over and above the legal interest, at six per cent. per annum, for two years, amounting to $80.00. He also testified that on the 23d day of October, 1849, at the city of New York, where said Britton and said Alexander then were, and where said Alexander then resided, said Britton presented to said Alexander a paper and requested him to sign it, which was as follows:

"I hereby agree to allow and pay A. G. Britton, upon the note he holds against me, dated November 20, 1837, for the sum of $2000.00,

interest as by law established in the State of New York. New York, October 23, 1849."

And that he did sign it and return it to said Britton, and that said writing was in said Britton's handwriting. He also testified that said Britton there had said note for $2000.00 with him.

It appeared that the counsel for the defendant in review had been duly notified to produce said paper at the trial, but that he did not do so though requested.

Said Alexander further testified that the payments indorsed on said note were made by him in pursuance of said agreement, but that the whole amount paid by him each time, was indorsed on said note.

Said Charles introduced a paper of which the following is a copy, and proved the same to be in the handwriting of Edward M. Bissell, who was joint administrator with said Little of said Britton's estate, until his decease which happened in the year 1857, April 15.

### COPY OF SAID PAPER.

"Note, Nov. 20, 1837, $2000.00, and interest annually.

|  | Indorsed, Oct. 23, 1849, | 967.22 |
|---|---|---|
| " | Feb. 22, 1853, | 500.00 |
| " | June 27, 1854, | 500.00 |
| " | July 10, 1855, | 500.00 |
| " | Aug. 30, 1855, | 600.00 |

Copy of agreement about interest.

I hereby agree to allow and pay A. G. Britton, upon the note he holds against me, dated Nov. 20, 1837, for the sum of $2000, interest as by law established in the State of New York.

New York, Oct. 23, 1849."

And said Alexander testified, subject to exception, that, on the 30th of August, 1855, he sent to said Bissell, by said Charles, $600, to be paid to said Bissell upon said note, and requested said Charles to obtain from said Bissell a minute of the amount due upon said note, and that said Charles in a short time returned to him upon the same day with said paper, in pursuance of the errand so committed to him.

Said Charles further produced two letters, which were admitted to be in the handwriting of said Little, and of which the following are copies :

Manchester, N. H., July 14, 1855.

A. S. RILEY, Esq.,

Dear Sir : Yours of July 1st is received. I find by Mr. Britton's memorandums, and by your agreement, that the interest in New York is to be allowed on the note, payable annually, which I suppose is 7 per cent. Taking Mr. Bissell's figures, as he had it cast, (as per agreement of yours) the balance due July 1st, 1857, I make $2041.16. I was disappointed in not receiving at least $500.00 the first of July, as Mr. Bissell had assured me that I should have that amount, if not more,

at that time.   It is now nearly four years since Mr. Britton's death, and the heirs are pressing to have the estate settled.   I hope you will find it convenient to settle the balance soon, and much oblige.
        Yours truly,                    T. W. LITTLE, Administrator,
                                                         A. G. BRITTON.
    "Please let me hear from you soon."

                                        Manchester, Jan. 23, 1862.
    A. S. RILEY. Esq.,
        Dear Sir : Yours of the 16th inst. was duly received.   I notice your offer of seven hundred dollars for our claim ; I think the heirs will not be willing to accept your proposition, as we have always considered that a much larger amount than the court has given us was honestly our due.   In 1849 you promised Mr. Britton New York interest on the note, which would have made a difference of several hundred dollars, and having been subject to a suit, it will probably cost us at least one hundred dollars for lawyers' fees, besides our own time and expenses, from the amount awarded us.   I will, as soon as I can, lay your proposition before the heirs, and will then act on their decision.   I hope you will arrange the matter with Mr. Blaisdell, without making further costs to either of us.
        Very truly yours,                    T. W. LITTLE."

    To the admission of which two letters, and of said paper in the handwriting of said Bissell, said Townsend objected, but they were admitted.
    Said Charles pleaded the general issue, and several pleas of usury, in bar of the action, and plea of usury praying a deduction of three times the amount of the usurious interest paid and of that accrued upon said note, and upon the money due thereon; which pleas are well pleaded and adapted to said evidence, and sufficient to bar the action if by the competent evidence the action should be barred, or to entitle said Charles to such deduction as the evidence will warrant.
    Said Charles contended that three times said sum of $80 should be deducted from the amount due upon said note, and that by reason of said contract to pay New York interest, which was seven per cent., there was accrued upon the sum due upon said note immediately subsequent to the payment of October 23, 1849, seven per cent. interest, one per cent. of which is usurious, and that there should be a deduction on account thereof, of three times the amount of one per cent. interest from October 23, 1849, inclusive, to the time of the commencement of the original action, at least.   He also contended that there was an error in the computation of the amount due on the note at the former trial of from one hundred and eighteen to one hundred and thirty dollars, the sum found due upon the note being too large by that amount.
    Said Little and Bissell were appointed joint administrators of said Britton's estate on the 27th day of January, A. D. 1864.
    The court find from said paper in said Bissell's handwriting, and said two letters of said Little, if competent—independent of the testimony

of said Alexander S. Riley—the fact of said agreement to pay interest as by law established in the State of New York, viz., at the rate of seven per cent., and that the payment of such interest was insisted on by said Britton in his life time, and by his administrators after his decease, but no actual application of any money paid upon said note was ever made in the payment of any interest under said contract, except as above stated. The court also find that said sum of eighty dollars was paid as stated by said Alexander, if said Alexander was a competent witness, otherwise not paid, and rule, *pro forma*, that said Alexander was a competent witness. And also that no deduction ought to be made under the circumstances above stated, on account of the agreement to pay New York interest, or anything done under or by virtue of said agreement.

And it is agreed by the parties that upon the foregoing case the court shall order such judgment as is proper.

*Blaisdell*, for Townsend.

I. Alexander S. Riley was not a competent witness.

He conveyed the mortgaged premises to the plaintiff in review, with covenant of warranty. His conveyance was without consideration, and void as to creditors. The premises were in fact immediately after reconveyed to him by secret conveyance, unrecorded until long after the commencement of the original suit.

The release of Charles H. does not render him competent. Notwithstanding that, he still remains interested. The premises are his. He is the party in interest. He is interested to discharge or diminish the incumbrance on what is now, and in fact has constantly been, his own property. *Little* v. *Riley*, 43 N. H. 109.

In form this action is against Charles H. the tenant in possession, and, at the time of its commencement, as appeared by the record, the owner of the fee; in fact, it is against Alexander S., the mortgagor, and the actual owner of the equity of redemption. *Hunt* v. *Hunt*, 17 Pick. 118.

As appeared by the record Charles H. at the commencement of ths suit held the title to the mortgaged premises by deed from Alexander S., and as now appears by the testimony of Alexander S. himself, that deed was without consideration. This creates a secret trust, and renders the conveyance void as against creditors. But Charles H. holds for the benefit of Alexander S., so far at least as his creditors are concerned; and a judgment against Charles H. under such circumstances binds Alexander S.

They held out to the world that the equity of redemption in the mortgaged premises belonged to Charles H. when in fact it belonged to Alexander S. The record represented the title in Charles H. The fact was concealed that that title was void for want of consideration; and the other fact also that immediately subsequent to the conveyance to Charles H. he had re-conveyed to Alexander S.; no change of possession occurring during these transactions. Recording the deed from Charles

H. to Alexander S. subsequently to the commencement of the suit cannot change the legal relations of the parties here.

II. The agreement of Oct. 27, 1849, to pay interest as by law established in the State of New York was not usurious and does not taint the note secured by the mortgage.

It was a separate and independent contract or agreement made long subsequent to the date of the note, and has never been in any part performed.

It was without consideration and void; being simply a voluntary promise to do what the party might do or refuse to do at his option, leaving the promisee without remedy; and this, independent of any question of usury. He has exercised his option, and the agreement remains unperformed and void.

It cannot be said that there has been *secured* upon the money sued for or secured by the mortgage, interest at a higher rate, &c., for the promise was void and remains entirely unperformed.

Payment of usury upon an agreement subsequent to the date of the note does not corrupt the note, but only subjects the party receiving it to the penalty provided by statute. *Thompson* v. *Woodbridge*, 8 Mass. 256; *Willie* v. *Green*, 2 N. H. 333.

The opinion in *State* v. *Tuppan*, 15 N. H. 91, goes no further than this.

But we submit that if the agreement had been made upon consideration of giving day of payment, even then it would not have been usurious. It was made by the parties in New York, where Alexander S. Riley then resided; and there is nothing in the agreement to show that it was not to be performed in New York.

"Suppose a debt is contracted in one country, and afterwards in consideration of further delay, the debtor in another country enters into a new contract for the payment of interest upon the debt at a higher rate than that allowed by the country where the original debt was contracted, but not higher than that allowed by the law of the country where it is so stipulated, it may be asked whether such stipulation is valid. It has been decided that it is." Story's Conflict of Laws, sec. 293; *Conner* v. *Bellamont*, 2 Atk. 382; *Hosford* v. *Nichols*, 1 Paige 220.

The general doctrine is, that the law of the place where the contract is made is to determine the rate of interest when the contract specifically gives interest; and this will be the case, though the loan be secured by a mortgage on land in another State, unless there be circumstances to show that the parties had in view the laws of the latter place in respect to interest. 2 Kent's Com. 460; *De Wolf* v. *Johnson*, 10 Wheaton 367.

In *Peck* v. *Mayo*, 14 Vermont 33, the rule is declared to be: If a contract be entered into in one place, to be performed in another, the parties may stipulate for the rate of interest of either country. See Kent's Com. 461, note (c) 9th ed.

III. The mode of computing interest where the payment is less than

the interest accrued to the time of such payment does not appear to have been judicially determined in this State.

The defendant in review claims that the mode adopted in making up the former judgment in this case was correct; and that the true course is to cast the interest up to the time of payment, then deduct such payment from the amount of principal and interest due, and make the balance the principal upon which to cast interest to the time of the next payment, and so on.

This is the rule adopted where the payment exceeds the interest accrued, without regard to the time intervening between the payments. If not more than two or three months have elapsed between them, or even a shorter time, still a rest is made at each payment, and the balance remaining due after deducting the payment becomes the principal upon which interest is to be computed to the next payment. *Ross* v. *Russell*, 31 N. H. 386.

The reason for the rule is to be found in the fact that at the time of each payment the parties assume a new relation, and by the adjustment of their mutual credits fix the balance due, and that becomes a new debt or principal upon which interest is to be computed.

There is nothing in the ordinary form of a promissory note with interest annually to justify compounding the interest every time a payment is made, even if made as often as every one, two or six months, that would not equally justify the same proceeding where payment is less than the interest accrued.

*Felton & Hibbard*, and *Lane*, for defendant Riley.

1. Said Riley insists that, upon a correct computation of the interest upon the note in controversy, there will be found due, at the time of the rendition of the former judgment, only $833.29, instead of $973.97, the amount found due, (erroneously as we say) in the original action, making an error of $140.68, independent of any question of usury. In casting interest in this State, upon notes bearing annual interest, where partial payments have been made, the payments if at any time amounting to a sum more than sufficient to pay the interest upon interest (which bears no interest) should be applied first to the interest upon interest, and the balance should then be applied to the interest upon the principal which bears simple interest, and the unpaid balance of the interest bearing simple interest should still bear simple interest only, and should not be added to the principal and made to bear annual interest. This is in accordance with the spirit of the Massachusetts rule, the terms of which do not apply, in this State, to notes bearing annual interest, because upon such notes no interest is cast upon interest in Massachusetts, the only way of obtaining annual interest there, being to collect the interest when it becomes due. See *Hastings* v. *Wiswall*, 8 Mass. 455; *Wilcox* v. *Howland*, 23 Pick. 167; *Ferry* v. *Ferry*, 2 Cush. 92. The rule I have here suggested is the only just rule, and produces the result before stated.

2. Alexander S. Riley is not a party to the action, and was therefore

a competent witness.   A judgment in this action cannot bind said Alexander unless he is in some way made, or becomes a party to the suit. He has neither assumed the defense of the suit, nor been required or notified to do so.   He cannot, therefore, even independent of the release executed to him by Charles H. Riley, be made chargeable by the result, nor be estopped thereby, and if he could be made chargeable, the release relieves him from liability.   Said Alexander has not paid the amount found due upon the mortgage by the former judgment, and Charles H. Riley is still in possession of the mortgaged premises, and, if said Alexander so elects, he can now, or at any time within a year of the time of taking possession by Mr. Britton's administrator, institute proceedings at law or in equity, for the redemption of the mortgaged premises, which proceedings can, in no way, be affected by the result of this suit.   See *Hunt* v. *Hunt*, 17 Pick. 118, 122, 123.   If no such proceedings should be had, possession taken under a writ of possession against C. H. Riley, and held one year, would, it is true, foreclose the right of redemption, even as against said Alexander, and the same would be the effect of possession taken without any judgment, and held a year with the notice required by statute.   Alexander S. Riley cannot be personally bound by any judgment that can be rendered in this suit.   It would be by the continued possession, and not by the judgment, that his right would be affected, just as it would be affected by possession taken without suit.   Suit is commenced for the purpose of obtaining possession and for no other purpose.   "The judgment is the means of obtaining possession, and the statute works on the possession, and by the lapse of time effects a foreclosure.   The judgment, therefore, is but incidental."   *Hunt* v. *Hunt*, 17 Pick. before cited, 118, 122, 123.   It is, indeed, true, that when a suit has been commenced, to recover possession, the amount due upon the mortgage may be ascertained, incidentally, as a part of the judgment, as between the parties to the suit; but not so as to preclude other persons not parties to the suit; and such persons, notwithstanding such judgment, may proceed to have the amount due upon the mortgage ascertained according to the provisions of the Compiled Statutes, page 291, secs. 8, 9, 10 and 11, and page 434, sec. 9.

3.  We say that by virtue of the promise obtained from said Alexander by Mr. Britton, and insisted on by him and his administrators, there was secured upon the money sued for, "interest at a higher rate than six dollars for a hundred dollars for one year" within the provisions of section 3, page 491 of the Compiled Statutes.   In that section a distinction is made between interest "secured upon the money sued for," and interest secured "by the instrument" upon which the suit is founded.   If the promise in question had been made at the time the note was given, there can be little doubt, I think, that the note would have been usurious.   It is difficult to discover why, under the statute, the collateral promise should not be held to have the same effect, from the time of making it whether made at the date of the note or afterwards, and we say it should be held to taint the note from that time so long as it was permitted to lie on interest.   The promise is substantially a promise to

pay interest annually, at seven per cent. per annum, so long as the note should run. By the terms of the statute the three-fold deduction is to be made if the unlawful interest is "paid" or "secured" upon the money sued for. *Payment* of money after the date of the note corrupts the note, and why not the securing of usury after its date. See *State* v. *Tappan*, 15 N. H. 91.

It may be said that the collateral promise is unlawful and void. . The same might have been said if the promise had been expressly incorporated into the note itself; and yet can it be doubted that in that case the note would have been usurious, even though made payable on demand?

BELLOWS, J. The first question is, whether Alexander S. Riley was a competent witness, the adverse party being an administrator, and not having elected to testify; and this depends upon the inquiry whether he is to be regarded as a party or not, within the meaning of our statute.

On this point it appears, that, before the commencement of the original suit, Alexander had conveyed two thirds of his equity of redemption to his brother, the defendant, and one third to his sister; but before the suit was brought, they had both reconveyed their interests to Alexander, and at the commencement of the suit the defendant was in possession of the demanded premises. It does not appear that the said Alexander had ever assumed the defense of the action, or had ever been notified to do so. In addition to this the defendant by deed released the said Alexander from all liabilities or demands arising out of this suit.

Under these circumstances, we think the witness was not a party to the suit within the meaning of the statutes of 1857 and 1858, relating to the competency of witnesses. In the former case between the parties, reported 43 N. H. 109, it was found as matter of fact that the witness, Alexander Riley, was a party in interest; and he was held, therefore, to be incompetent. Now, however, there is no such finding, and the evidence reported does not show it. If the defendant was the tenant of the witness, and holding under his title with warranty, a different question might be made; but then it is by no means certain that the warrantor would be regarded as a party, although, if notified, he might be bound by the judgment. But in this case no such relation is shown between the witness and the defendant, and it does not even appear that the latter is in under the witness as his tenant.

In *Barker* v. *Remick*, 43 N. H. 235, which was a suit against the former sheriff of Carroll county for the default of his deputy, Charles H. Parker, the present sheriff of that county, the defendant pleaded in abatement that said Parker was the party defendant in interest, and that the services by his deputy was therefore invalid; but it was decided that the fact that the said Parker had an interest in the suit did not make him a party, inasmuch as he might determine to take upon him the defense, and leave the sheriff to his remedy on the deputy's official bond.

In *Carlton* v. *Patterson*, 29 N. H. 587, it is said that to make the admissions of a person not a party to the record, evidence as of a par-

ty, it is necessary to show that he is the party in interest—the party who really carries on the controversy, under a party who has no interest in it, and is merely a nominal party, or under one who is fully indemnified. See also *Reed* v. *Spalding*, 42 N. H. 120.

In the case before us, it does not appear that Alexander S. Riley had any interest in the event of the suit, or if he had, that he had assumed the defense of it; and upon the principles of the cases cited, he can in no sense be deemed a party. It is true that he appears to be the owner of the equity of redemption, but there is nothing that establishes a legal priority with the defendant so that the witness would be bound by the judgment.

The testimony of Alexander S. Riley was therefore properly received, and being so, according to the provisions in the case, it is to be taken as found, that, at the making of the note, the debtor paid eighty dollars over and above the legal interest; and therefore there should be deducted from the sum lawfully due on the note, three times the amount of such unlawful interest, being two hundred and forty dollars.

It is further claimed by the defendant that there should be deducted, also, three times the amount of the unlawful interest agreed to be paid in New York, October 23, 1849, under the name of New York interest. On that point it appears, that, after the note was given in 1837, payable in New Hampshire, and secured by a mortgage of real estate here, the said Alexander remained in New York, and was residing there on the 23d day of October, 1849, and then and there in writing agreed to allow and pay to said Britton who was then in New York, upon this note, interest as by law established in the State of New York.

Upon this state of facts a question arises whether by this agreement any interest was secured upon the money sued for, within the provisions of our usury laws, and if so, whether the interest so secured was unlawful. The note was originally made payable in New Hampshire, and by parties having their domicil here, and it was also secured by a mortgage of bonds in this State.

And this raises the general question whether, in the case of a note payable in one State, an agreement, subsequent to its maturity, made in another where the maker had his domicil, to pay the rate of interest allowed by the latter State, is usurious, when that rate happens to be greater than is allowed in this State where it was originally payable. If the interest due by such subsequent contract is to be regarded as payable in New York where the contract was made, there would seem to be no doubt that it would be valid.

In this case the principal was payable originally in New Hampshire, and ordinarily in the absence of express stipulations, the interest is regarded as a mere incident, and yet there would seem to be no doubt that a subsequent agreement might be made for the payment of the interest at a different time and place from what is designated in the note; such agreement being evidenced by a bond, note, or other contract. So, if in consideration of forbearance, the maker made a verbal agreement to pay the interest half yearly, or otherwise, expressly at the place of his domicil in a State other than the one where the note was origi-

nally payable, we see no reason to doubt the validity of such an agreement, even if it stipulated a rate of interest higher than is allowed in the latter State, unless such agreement was entered into for the purpose of evading our statute of usury.

If the place of the payment of the interest be not named in such subsequent agreement, the question would arise whether it would follow the place of the payment of the principal, or would be regarded as payable in the State where it was made. If it would be regarded as payable where the principal was payable, the question would then arise whether the parties to a contract made in one State and payable in another, may lawfully stipulate for the rate of interest of the State where the contract is made, although higher than is allowed in the State where the money is payable.

Upon a careful consideration of the authorities bearing upon this question, we think that the parties may stipulate for the legal interest of either State, unless the arrangement be entered into merely as a cover for usury. If, then, the contract was made in New York in good faith, and not to evade the usury laws of New Hampshire it must be regarded as valid, although the New York rate of interest was higher than that of New Hampshire, but it would be otherwise if the place of making the contract was selected merely as a cover for usury, and so it would be if the place of payment was selected for the purpose of obtaining a higher rate of interest than is allowed where the contract is made.

These views are sustained by decided cases in New York, Vermont and Louisiana, and none of an opposite character have been brought to our notice. The case of *Depau* v. *Humphreys*, 20 Martin's Louis. Rep. 1, is a leading case on this subject, and was much considered, and it was held, that, upon a loan of money in New Orleans, and a note given for it there, the parties might stipulate for the highest legal rate of interest allowed by the laws of that State, although the note was made payable in New York where the rate of interest was less.

In *Chapman* v. *Robinson & al.*, 6 Paige Ch. Rep. 627, the same doctrine was fully recognized. There a resident in England agreed to loan money to a citizen of New York on a bond and mortgage of lands in that State at New York interest, and, according to the agreement, the securities were sent to England and the money deposited to the credit of the borrower with his banker in London. It was decided that the stipulation for New York interest was valid, though it was to be deemed payable in England. In giving the opinion of the court, the chancellor says, that if a contract for the loan of money is made here upon a mortgage of lands in this State, which would be valid if the money was payable to the creditor here, it cannot be a violation of the English usury laws though the money is there payable, and the rate of interest is less there than in New York; holding, in substance, that a loan of money upon personal security, at the rate of interest allowed by the place where it was made, and the security given, though payable in another place where the rate of interest is less, would not be a violation of the usury laws of the latter place, unless such arrangement was intended as a mere cover for usury. To the same effect is *Pratt* v.

*Adams*, 7 Paige Ch. Rep. 632, where it was held that a contract to pay the legal rate of interest in the State where the money was loaned, and the contract made, is not usurious because the bill or note given for it was made payable in a State where the legal rate of interest was lower, unless the loan out of the State was a mere device to evade the laws of the State where the money was payable.

In *Hosford* v. *Nichols*, 1 Paige Ch. Rep. 225, lands in New York were bargained to be sold, both parties then residing there; but before it was executed, the seller removed to Pennsylvania, and there gave a deed of the land and received back a mortgage for the price, reserving New York interest, which was greater than that of Pennsylvania. It was held that giving the deed and taking the mortgage was only a consummation of the original contract made in New York and not void for usury.

In *Peck & al.* v. *Mayo & al.*, 14 Vermont 38, it is laid down by Redfield, J., as a rule deduced from the authorities cited, that if a contract be entered into in one place, to be performed in another, and the rate of interest differ in the two places, the parties may stipulate for the rate of interest of either, and thus by their own express contract determine with reference to the laws of which country that incident of the contract shall be decided, and that if the contract stipulate for interest generally, it shall be at the rate of the place of payment, unless it appears that the parties intended to contract with reference to the law of the other place.

In regard to *Depau* v. *Humphreys*, 20 Martin's Louis. Rep. 1, Mr. Justice Story, in his Conflict of Laws, p. 252, thinks the foreign points, cited in that case, do not establish the doctrine there laid down; but says, on the other hand, there are other foreign points not cited in that case whose doctrines lead to an opposite conclusion, and yet he lays it down on page 244 of the same work, as having been decided, that a subsequent contract in another State to pay the legal interest of that State, which is higher than is allowed where the note was originally payable, is valid. Chancellor Kent also, in 2d vol. of his Commentaries, p. *461, note c. says that "the principle now established in Louisiana and New York, is, that the place where the contract is made determines its validity as to interest, though made payable in another State or country where the interest is lower. This principle has much to recommend it for reasonableness, convenience and certainty, except in cases where the whole arrangement was evidently and fraudulently intended as a mere cover for usury."

These authorities, we think, are entitled to great weight, and in the absence of controlling considerations must be regarded as decisive. It is true that in many cases interest may properly be regarded as a mere incident of the debt, and so payable only where the principal is payable; but this is by no means always the case, for by express stipulation the interest may become payable by itself, and a suit maintained for it before the principal becomes due, as in the case of a contract to pay interest annually; so in the case of bonds with coupons attached; and we see no objection to the parties being allowed to fix the amount of inter-

est, and the time and place of payment of it, as they may all other particulars of the contract, provided it be done in good faith and with no design to evade the usury laws.

Again, there are decisions which assume that the rate of interest may be other than that of the place where the contract was made, where it appears that the parties contracted in reference to the laws of another place, although not expressly so stipulated. So it is laid down in *Fanning & al.* v. *Consequa,* 17 Johns. Rep. 518; and cases may readily be conceived where it might be difficult to determine whether the parties had reference to the laws of the place where the contract was made, or some other place, as where the bargain is made in one State, for the sale of lands there situate, and consummated in another by executing the deed and taking back the mortgage for the price, or where it is left doubtful whether the money is to be paid at the domicil of the promisor, or that of the promisee in another State. In such cases it is desirable that the parties should be at liberty to determine by express stipulation, made in good faith, by which law the rate of interest shall be governed.

With these views, we are of the opinion that if a contract for New York interest was made there, October 23, 1849, whether such interest was to be regarded as payable there or in New Hampshire, it is not affected by the usury laws of this State, unless made there with a design to evade them; and, as no such design is found by the judge who tried the cause, or is to be gathered from the facts reported, we are of the opinion that if such a contract was made it is not affected by our usury laws.

It appears that the domicil of the debtor was in New York, and that the creditor was there, and the debt had been long due though originally payable in New Hampshire; and there is nothing tending to show that the place of making this contract was selected with any view to evade the usury laws of New Hampshire. Under such circumstances a contract, in consideration of further forbearance, to pay the legal rate of interest of the State of New York, would be valid by the laws of that State, and equally so by our own.

Whether the parties on that occasion made a contract, that, independent of the statutes of usury would be binding, or whether it was merely a naked promise, we give no opinion, because the conclusion we have reached upon the other point renders it unnecessary.

The remaining question is as to the computation of interest, and the main difference between the parties is whether rests ought to be made at the various times when there were partial payments, but of sums less than the interest due. The general principle is well established in this State, that partial payments are to be applied first to the extinguishment of interest due, and then to the principal. If the payment equals or exceeds the interest the course is plain; but here many of the payments are less, and it does not appear to have been expressly decided in this State how the interest is to be computed in such case. There is nothing, however, in the principles already established in our courts, that suggests a rest wherever a payment is made, by which interest may be

turned into principal; on the contrary it has been generally understood that in case a payment is made of a sum less than the interest due, the surplus of interest must not be taken to augment the principal; and this, we think, accords with the course of the court, and is the legitimate result of the principles laid down in the decided cases.

Such is distinctly the doctrine of the New York courts, as laid down by Chancellor Kent in *The State of Connecticut* v. *Jackson*, 1 Johns. Ch. Rep. 13, 16, and cases cited, showing very clearly that at common law it is the general rule that interest does not carry interest.

In Massachusetts, interest upon interest is not allowed, even if there be a contract expressly to pay interest annually.    *Wilcox* v. *Howland*, 23 Pick. 167; *Ferry* v. *Ferry*, 2 Cush. 92, and *Dean* v. *Williams*, 17 Mass. 417, where it is expressly held that if the payment is less than the interest the surplus is not to be added to the principal, and that interest is never allowed to form part of the principal so as to carry interest.    The same general views are recognized in Maine. *Doe* v. *Warren & al.*, 7 Greenleaf's Rep. 48.

In New Hampshire, where there is an agreement to pay interest annually, the rule is that for the detention of the annual interest, simple interest is to be computed, and that only from the time such annual interest becomes due.    *Little* v. *Riley*, 43 N. H. 113; *Pierce & al.* v. *Rowe*, 1 N. H. 179.    But we find nothing to give any countenance to the allowance of interest on any surplus of interest that may have accrued at other times than at the end of the year, because payments may thus have been made.    Such a doctrine would be a great hardship upon the debtor, discouraging the payment of small sums, and giving to the creditor an undue advantage that, as we think, finds no countenance in usage, or the principles of the common law.

Another question arises upon the fact that indorsements have been made at various times and some within the year, of sums less than the amount of interest then due.    In such cases interest should be computed upon the principal yearly with simple interest on the annual interest, applying the payments of each year, first to the payment of the interest on the annual interest, then to the annual interest itself, and if any remain, to the principal.    In the case of payments made before the end of any year, they should be applied as above stated, at the end of the year with interest from the time they were paid.    *Hill* v. *McIntyre*, Rock. Co. June, 1865.

It has been sometimes said interest on such indorsements ought not to be reckoned, upon the ground that it should be regarded as a payment in advance of the interest due at the end of the year.    If it were so stated expressly, or such was the necessary inference from the indorsement, this view might be the correct one; but ordinarily, where there is nothing to indicate a different intention, it must be deemed to be a payment on account of interest, if any be due, and if none is due, then on account of principal; and it is at once to be applied accordingly.    If the payment be less than the interest, and the debt be upon simple interest only, it is immaterial whether in the final computation such payment be applied and deducted from the amount due at the time

it is paid, or at the time of such final computation, because the interest does not bear interest.

If the debt bears annual interest, in which case by our law the annual interest bears simple interest, but there is no interest due upon the principal, except what is accruing during the year when such partial payment was made, then, as there is no interest which is bearing interest, it stands like the case of a debt bearing simple interest only, so far as the computation for that year is concerned, and it is immaterial whether such payment, if made on account of interest and is less than the interest, is applied at the time it is made or at the end of the year.

If, as in the case before us, interest for previous years had accumulated, and is bearing interest, such partial payment should at once be applied to the interest already due, and deducted therefrom; that is, to the annual interest up to the end of the year preceding the one where such payment was made, with simple interest upon such annual interest : up to the time of the payment; such annual interest when accrued being like a debt due upon demand with interest. The sum so paid should be applied first to the interest on the annual interest, then to the annual interest itself, and the remainder to the principal. This is in strict accordance with the well settled principle in this State, that payments are first to be applied to the interest due, and then to the principal. Here the accumulated annual interest by our law draws simple interest, and it therefore assumes the character of principal; and where simple interest upon it has accrued, and is detained, it is but an extension of the settled principle to require that general payments should first be applied to extinguish that interest.

As an objection to the computation of interest upon payments made during the year, it is urged, that, by carrying out that method of computation, the entire debt might be extinguished without even paying anything beyond the interest; and this is undoubtedly true, where the interest draws no interest, and the sums paid are not, as they should be, applied to extinguish the interest, because if payments are made annually, or semi-annually, of sums equal to the accruing interest, and such payments are put upon interest, the aggregate of such payments would in process of time, depending upon the *rate* of interest, exceed the principal, which at length must necessarily extinguish it, ahd simply because there had come to be a greater amount at interest in favor of the debtor. In this way at seven per cent. interest, and a payment of a yearly sum equal to the yearly interest, the debt would be extinguished in little short of twenty-one years. See *Stoughton* v. *Lynch*, 2 Johns. Ch. 210, and the table prepared in that cause in Hoffman's Masters in Ch. appendix 360. Of course no such result could happen where, as in the case of a note on interest annually, the interest is put on interest at the end of the year, and the payments are made only as the annual interest becomes due, because in such case the same sums, and at the same time, would be put on interest, but it would be otherwise if the payments were made before the interest became due. If the debt was on simple interest only, it would be objectionable without doubt, because the payments should be applied to extinguish the interest.

The rules for the computation of interest on this note to be deduced from these views are, that simple interest is to be cast upon the annual interest when it becomes due at the end of each year, but without rests on account of intermediate payments; that the payments of each year are to be applied first to the interest on the annual interest, then to the annual interest itself, and then to the principal; and when payments are made before the end of any year, they should be applied at the end of the year with interest from the time they were made; though if, where a partial payment is made on account of interest, there\ is due no interest except what is accruing during the same year, and the payment be less than the interest, the deduction at the end of the year of such payment, should not be with interest added.

Upon these principles the interest may be computed and judgment rendered accordingly.